# Johnston & Stewart *v.* Riddle.

*Petition by Judgment Creditors, Parties to Suit for Fore-closure, to be allowed to prosecute their Garnishments at Law.*

1. *Rents and profits, as between mortgagor and mortgagee.*—In ordinary cases, the mortgagee can always claim the rents, income and profits of the mortgaged property, after the law-day, or forfeiture of the mortgage; but he is required to be active in making his claim, either by giving notice to the tenants or lessees in possession, or by filing a bill for fore-closure, and having a receiver appointed; and he acquires no lien by his bill until a receiver is appointed, nor can the receiver recover rents which have accrued before his appointment, and which are then in the hands of an agent of the mortgagor.

2. *Same; when rents and profits are specifically pledged.*—This rule applies to a mortgage executed by a railroad corporation, conveying all its property, real and personal, "together with all the tolls, incomes, issues and profits, which may accrue from the road in its use or operation," in trust for the benefit of its bondholders, when it appears that the parties clearly contemplated that the railroad company should continue to hold possession of the mortgaged property, using and operating the road, receiving and appropriating its earnings, until such earnings should be claimed by the trustees under the mortgage.

3. *Conflicting liens of garnishments and mortgagees seeking foreclosure.* Moneys accruing to the railroad company from its earnings, and in the hands of an express company as its bailee, are subject to garnishment at the suit of its judgment creditors; and such garnishments being served prior to the filing of a bill by the trustees to foreclose the mortgage, their lien must prevail over any claim asserted by the trustees.

4. *Conclusiveness of decree.*—Although the several judgment creditors, by whom the garnishments were sued out, were made defendants to the trustees' bill for foreclosure, were enjoined from prosecuting their garnishments while the suit was pending, and were allowed an opportunity to prove their claim against any surplus that might remain after the mortgage debts were satisfied; yet, as they never proved their claims, and the garnishee was not made a party to the suit, and the *status* of the funds attached in the hands of the garnishee was not in issue in that cause, nor necessarily involved in the adjudication of the rights of the several parties then litigated, they are not concluded by that decree, and may properly be allowed by the court to pursue their remedies by gar-nishment at law.

5. *Foreclosure suit, abandoned or discontinued; effect as notice inter-cepting rents and profits.*—When a suit for foreclosure is abandoned, or discontinued, after a receiver has been appointed, it is the same as if it had never been instituted, and has no effect as notice in intercepting the rents and profits.

[Johnston & Stewart v. Riddle.]

APPEAL from the Chancery Court of Dallas.

Heard before the Hon. N. S. GRAHAM.

The appellees in this case, S. S. D. Riddle, James J. Vincent, J. G. L. Huie, and others, severally recovered judgments in the Circuit Court of Dallas county, at its Fall term, 1871, against the Selma, Rome and Dalton Railroad Company; and executions on said judgments having been duly returned "No property found," writs of garnishments in each case was sued out on the 24th December, 1872, and served on the same day on the Southern Express Company, as the debtor of said railroad company. At the ensuing Spring term, 1873, the garnishee answered, that it was indebted to said railroad company in the sum of $800, for the hire and use of a railroad car for its business during the month of December, 1872, which fell due on the 31st day of the month; that it had in its possession several sealed packages, called "money packages," which were particularly described, some of which were in its possession when the garnishment was served, and others received subsequently, containing in all over $2,000, which were consigned to said railroad company; that this money and these packages were claimed by G. B. Lamar, and by James B. Johnston and John A. Stewart, and by other persons named, each asserting title under a mortgage executed by said railroad company; and that a suit for the foreclosure of one or more of these mortgages, instituted before the service of the garnishment, was still pending and undetermined in the Circuit Court of the United States at Mobile.

On the 19th day of March, 1873, James B. Johnston and John A. Stewart, as trustees under a mortgage, or deed of trust, executed to them by the said railroad company on the 1st October, 1867, filed their bill in said Chancery Court, on behalf of themselves and all other creditors of said railroad corporation, which was alleged to be insolvent, against the corporation itself, and against various persons who claimed liens on its property; asking a foreclosure of the complainants' mortgagage, an adjustment of the various conflicting liens and claims, the appointment of a receiver to take possession of the road, pending the suit, and operate it under the orders of the court, a sale of the road and all its property, and general relief. The case was twice brought to this court by appeal, at the instance of L. H. Meyer, one of the defendants; and the facts are fully stated in the reports.—*Meyer v. Johnston & Stewart*, 53 Ala. 237–360; 64 Ala. 603–671.

On the 12th April, 1881, as the record in the present case shows, Riddle and the other judgment creditors, who had sued out said garnishments, filed their petition in the cause, by leave of the court, alleging the rendition of their judgments, the issue and return of executions thereon, the issue and service of their

garnishments, the answer of the garnishee, and the filing of the bill by Johnston and Stewart; and the petition then proceeded as follows: "On the 1st April, 1873, at the instance of said complainants, this honorable court appointed a receiver of said railroad company's property and effects, who took charge thereof, and managed and controlled the same under the orders of said court, until said road and its property were sold by the order of said court. Your petitioners were diligently prosecuting their said writs of garnishment in said Circuit Court when, on the 29th day of December, 1873, said complainants obtained from this hon. court a restraining order, wherein and whereby your petitioners were restrained from prosecuting said writs of garnishment to effect; and on the 5th day of March, 1877, said restraining order was incorporated in the final decree rendered by the court in said cause, whereby your petitioners were restrained and enjoined from enforcing their lien acquired by the issue and service of said garnishments upon said debt and property in the hands of said express company. The track, lands, rolling-stock, franchises, and every species of property belonging to said railroad company, have been sold under the decree of this hon. court; and the proceeds are now being distributed, under the orders of the court, to those persons who are entitled thereto. Said bill of complaint was not filed, and said receiver was not appointed, until long after your petitioners had acquired a prior lien upon said debt of $800, and upon said money packages in the hands of said express company; and unless your petitioners are permitted to prosecute said writs of garnishment to effect, and enforce their lien upon said debt and property, they will lose the whole of their said debts. The premises considered, petitioners pray to be permitted to prosecute said writs of garnishment to effect in the Circuit Court of Dallas county, and for all such other and further relief as may be proper," &c.

A joint and several answer to this petition was filed by Johnston and Stewart as trustees, and by Meyer as trustee, under the mortgages executed to them respectively by said railroad company, which were foreclosed by the decree of the court. This answer contained the following allegations and statements: 1. The mortgages executed to said respondents respectively "conveyed all the property of said railroad company, of every kind and description, expressly including the tolls, issues, rents, income and profits of said road and other property." 2. On the 3d December, 1872, the outstanding debts of the railroad company, secured by said mortgages, exceeded $5,000,000, the company was in default in the payment of the principal and interest of the mortgage debts, and was insolvent; and on that day Henry Amy and Charles Moran, who were holders of a

[Johnston & Stewart v. Riddle.]

large amount of the bonds secured by said mortgages, filed their bill in equity in the District Court of the United States at Montgomery, on behalf of themselves and all the other bondholders, against the railroad company and the trustees, to foreclose said mortgages, and to enforce all the rights of the bondholders secured thereby; "and therein and thereby, among other things, claimed and demanded the tolls, issues, moneys and profits of said railroad and other property so mortgaged to them, and prayed, among other things, for the appointment of a receiver, to take possession of said road and other property, and to receive the tolls, issues, rents, moneys and profits thereof;" and the court made an order, on the same day the bill was filed, requiring the parties to appear and show cause why a receiver should not be appointed; "and afterwards, in due course of proceedings, a receiver was appointed in said cause, who took possession of said property, and received the rents, issues and income thereof; all of which will more fully appear by the record and proceedings in said cause, a transcript of which is on file in this cause, and is hereby made a part of this answer." 3. The bill in this case was filed on the 19th March, 1873, "while the said suit in the United States court was still pending; and afterwards, the parties, the subject-matter, and the objects of both suits being the same substantially, and the jurisdiction of this court being untrammelled by the residence of parties, the parties in interest elected to prosecute their suit, and to foreclose said mortgages, and to adjust their respective rights and claims, in this cause, and in this court, and ceased to prosecute their said suit in the United States court; but there was no break, hiatus, or lapse of time, in the assertion or prosecution of the rights and claims of the bondholders represented by respondents respectively, from the said 3d day of December, 1872, up to the present time." 4. The money and packages in the hands of the express company when the garnishment was served "consisted of the rents, issues and income of said railroad company, which arose and accrued from the daily operation of the road, after the 3d day of December, 1872, long after the rights of the parties represented by these respondents accrued, and long after their rights as to the rents, issues and income of said railroad and other property had been perfected and asserted by a proper claim and demand, and while those rights were being prosecuted before a proper tribunal; and the said express company, being advised that the rights of these respondents to the property and things so attached were prior and superior to the rights of the petitioners, delivered the same to the said railroad company, for the benefit of these respondents, as more fully appears by the answer of said express company to said writs of garnishment, which are

[Johnston & Stewart v. Riddle.]

herewith filed as a part of this answer." 6. "Said petitioners, in common with all other creditors of said railroad company, who were enjoined and restrained by the orders and decrees of this court, were, by the decrees of this court and the Supreme Court, required to propound and litigate their respective claims in this court, and in this cause; and respondents further aver that, prior to the orders and decrees made in that behalf, and soon after the filing of the bill in this cause, the said petitioners voluntarily intervened in this cause, and made themselves parties thereto, and answered said bill on the 6th November, 1873, and propounded their claims therein, and participated in the litigation throughout; and that all their rights in the premises are concluded and determined by the final decree in said cause rendered by the Supreme Court of Alabama, on the 23d day of March, 1881; all of which will more fully appear, and at large, by the record and proceedings in this cause, to which reference is here made for that purpose. And respondents aver that, in and by said final decree, the rights and equities of the bondholders represented by these respondents were adjudged to be prior and superior to the rights and equities of said petitioners, upon and against all the property of the said railroad company of every kind and description, including the rents, issues and income thereof; and that the entire proceeds of said property fell short, by many millions of dollars, of satisfying the said prior claims represented by these respondents, and that the said petitioners were estopped by the said final decree," &c.

The respondents also embraced in their answer a demurrer to the petition, "because it does not appear that the rights and equities of the petitioners in the premises are superior to the rights and equities of these respondents, but the contrary thereof does appear;" and they filed a counter petition, asking that the original petitioners be required to dismiss their garnishment suits. The cause being submitted to the chancellor "on the petition, answer, and demurrer," he overruled the demurrer, and held that the petitioners were entitled to the relief asked by them; and he therefore rendered a decree, vacating and setting aside the former restraining order, and allowing them to prosecute their garnishments at law. This decree, and each part thereof separately, is now assigned as error.

The transcript contains only the petition, answer, counter petition, and the chancellor's decree.

BROOKS & ROY, for appellants. 1.—The rights asserted by the petitioners have been adjudicated and finally determined by the decision in the main cause, to which they were defendants, and in which they appeared and asserted their rights.

[Johnston & Stewart v. Riddle.]

The bill was a general creditors' bill against an insolvent corporation, and it necessarily involved the subjection of all its property and effects to the payment of its debts, and the ascertainment of the respective liens and priorities of all its creditors. If *Riddle et al.* claimed a paramount lien on the funds attached, they might have brought it to the attention of the court, by proper pleadings and proof; and not having done so, they are equally concluded as if they had. The final decree expressly adjudges, that the mortgage liens are first and paramount liens over all the property, "of every kind and description whatsoever;" and that the other creditors, like these petitioners, shall participate in the distribution of the proceeds of the property, "after all the liens herein declared have been satisfied in their order." That the decree is conclusive, see *Hutchinion v. Dearing,* 20 Ala. 798; cases cited in 2 Brick. Digest, 145, §§ 205-6.

2. If the matter were *res integra,* the result would be the same. In this State, by a long series of adjudged cases, it has become a settled principle, that a mortgage is not a mere security and incident of the secured debt, but vests in the mortgagee the legal title after default, leaving in the mortgagor a mere equity of redemption.— *Welsh v. Phillips,* 54 Ala. 314; *Toomer v. Randolph,* 60 Ala. 360; *Barker v. Bell,* 37 Ala. 358; *Paulling v. Barron,* 32 Ala. 9. In such case, the legal title and ownership of the mortgagee being absolute at law, the rents and profits necessarily belong to him, and he may intercept and claim them by notice to the tenant, or other person in possession or receipt of them.— *Hutchinson v. Dearing,* 20 Ala. 798; *Watford v. Oates,* 57 Ala. 295; *Coker v. Pearsall,* 6 Ala. 542; *Kelly v. Trustees,* 58 Ala. 499. No particular form or claim of notice is required, to perfect his right. The filing of a creditors' bill, and the service of process under it, creates a *lis pendens,* and operates as notice to all the world.— *Durgan v. Waring,* 11 Ala. 994; *Crawford v. Kirksey,* 55 Ala. 303; *Miller v. Sherry,* 2 Wallace, 249. In this case, a bill was filed to enforce these rights, on the 3d December, 1872; there has been no break or lapse in the assertion and prosecution of these rights; the funds in controversy accrued from the rents and profits, and were attached in the hands of the garnishee, after the accrual of the equitable lien acquired by that suit; and the garnishee, acknowledging notice, and recognizing the rights of the mortgagees, has paid over the funds to them. Besides, the mortgages contain an express pledge of the rents and profits, and the bill sought to reach them.— *Scott v. Ware,* 64 Ala. 174.

3. The decisions of the Supreme Court of the United States, cited by the chancellor, and relied on by the appellees, proceed on the theory, adopted by that court, that a mortgage is but a

[Johnston & Stewart v. Riddle.]

security and incident of the debt secured by it. The difference between those decisions and ours is pointed out and commented on in *Welsh v. Phillips*, 54 Ala. 314.

J. R. & S. W. John, *contra.*—A mortgagor, in possession, may hire or lease the mortgaged property, and receive the rents and profits, until they are intercepted and claimed by the mortgagee.—*Smith v. Taylor*, 9 Ala. 633; *Hutchinson v. Dearing*, 20 Ala. 798; *Branch Bank v. Fry*, 23 Ala. 770. Filing a bill for foreclosure does not intercept the rents and profits until a receiver has been appointed, and the receiver can not recover rents which accrued before his appointment.—*Scott v. Ware*, 64 Ala. 174; *Hall v. Railroad Company*, 58 Ala. 10–24. At the time the garnishments were sued out and served, the railroad company might have maintained an action against the garnishee for the funds in its hands, and therefore they might be reached by garnishment; and if the garnishees paid out the money, they did it in their own wrong.—*Gilman v. Telegraph Co.*, 1 Otto, 603; *In re Tallassee Man. Co.*, 64 Ala. 596; *Lovelace v. Webb*, 62 Ala. 271; *Fosdick v. Schall*, 9 Otto, 235; *Railroad Co. v. Cowdrey*, 11 Wallace, 459. The appellants can take nothing by the suit of Amy and Moran, since it was discontinued and abandoned; nor can they take anything by the appointment of the receiver in this case, since the garnishments were served before he was appointed, and he never asserted, or was entitled to assert, any right or claim to the funds; nor has the right to them been adjudicated, the garnishee not even being a party to the suit.

SOMERVILLE, J.—The rule in ordinary cases is, that the mortgagee can always claim the rents, income or profits of the mortgaged property, after the law-day, or forfeiture of the mortgage. But he is required to be *active in making the claim*, either by giving notice to the tenants or lessees in possession, or by filing his bill for the purpose of foreclosure in a court of equity. And in the absence of a claim by notice, he obtains no lien on such rents, income or profits, by the mere filing of his bill, or even by the service of a summons on the defendants. To secure this right or lien, he must procure the appointment of a receiver by the court; and until *notice* is given by taking possession or otherwise, or a *receiver* is duly appointed, the mortgagor is entitled to continue his enjoyment of the rents, he being regarded, in equity, as the real and true owner of the property, as against every body excepting only the mortgagee. These propositions are well settled by the past decisions of this court. As said by this court, in *Hall v. Mobile & Montg. R. R. Co.* (58 Ala. 10–24), "even a receiver, when appointed, can not

[Johnston & Stewart v. Riddle.]

recover income then in the hands of an agent of the mortgagor, which accrued before the receiver was appointed."—*Scott v. Ware*, 64 Ala. 174; *Coker v. Pearsall*, 6 Ala. 542; *Branch Bank v. Fry*, 23 Ala. 770; 1 Jones on Mort. § 670.

It is insisted, however, that this rule is not applicable to the present case, because the mortgagor here conveyed all the property, real and personal, of the railroad company, "together with all the tolls, incomes, issues and profits, which may accrue from the road" in its use or operation, and that the money here attached by process of garnishment in the hands of the express company is in this manner specifically pledged. But the answer to this view is manifest. It is clearly contemplated that the mortgagor should continue to hold possession of the mortgaged property, and should be permitted to operate and use it, and receive and appropriate its earnings, until such earnings should be claimed by the trustees in the mortgage. Until a claim was interposed, therefore, by the mortgagees or trustees, the earnings belonged to the railroad company, who was in this case the mortgagor and defendant in the judgments upon which the several garnishments in question were sued out. This view of the question is fully sustained by the adjudged cases.—1 Jones Mortg. § 670; *Fosdick v. Schall*, 99 U. S. 235; *Bridge Co. v. Heidlebach*, 94 U. S. 798; *Gilman v. Telegraph Co.*, 91 U. S. 603; *Galveston R. R. v. Cowdrey*, 11 Wall. 459; *Noyes v. Rich*, 52 Me. 115.

The garnishments sued out by the several appellees, against the Southern Express Company, as garnishee, were served prior to the filing of the bill for foreclosure of the mortgages. The garnishee then owed the mortgagor, the Selma, Rome & Dalton Railroad Company, a certain sum of money, part of which was due for the use of a car, and the remainder held as bailee—all accruing from the earnings of the road. The control and dominion of these funds were recognized to be in the road at the time, and for them an action of *indebitatus assumpsit* would clearly have lain by the road against the garnishee. The garnishment was, therefore, a lien on the money, prior in time and equity to any claim or lien sought to be asserted by the mortgagees.

We are of opinion, that the matters involved in this suit were not settled or adjudicated by the decree of this court rendered at the December term, 1879, in the case of *Meyer v. Johnston & Stewart*, 64 Ala. 603. True, the appellees were made parties to that suit, and had the privilege accorded them of proving their claims against any surplus which might remain after satisfaction of the mortgage debts; but they never made such proof, nor was the Southern Express Company made a party. The *status* of the funds held by the garnishee was not one of

[Jones v. N. O. & S. R. R. Co. and Im. Asso.]

the questions in issue upon the trial of that cause, nor did the adjudication then made *necessarily involve* the relative priority of any liens asserted to it by any of the parties litigant.—*Mc-Donald v. Mobile Life Ins. Co.*, 65 Ala. 358.

The appellants can derive no aid from the suit for foreclosure which was commenced in the United States Court, and was afterwards discontinued. The abandonment of that proceeding, even though its prosecution was effectual to operate as notice, lost the benefit thus acquired by the mortgagees. When voluntarily discontinued, it was, for the purposes here considered, the same as if never commenced. This rule is applicable to the doctrine of *lis pendens*, in all of its phases, where the rights of purchasers are concerned.—Freeman on Judg. § 203.

The appelleees were, in our opinion, properly permitted to prosecute their garnishment suits at law, and there was no error in the rulings of the chancellor.

Affirmed.

STONE, J., not sitting.