# Thompson & Co. v. Union Warehouse Co.

### Action of Detinue by Mortgagee.

1. *Mortgagee of land entitled to crop against subsequent mortgagee of crop* —A mortgagee of land who, on default in the payment of the mortgage debt, receives a surrender of the land from the mortgagor, and appoints the latter his agent to gather the crop then growing thereon, is entitled to the crop when gathered, as against a subsequent mortgagee of the crop, who claims under a mortgage which was given by the same mortgagor to secure advances to enable him to make said crop.

2. *Bailment; bailee can defend detinue suit on his bailor's title.*—In an action of detinue against one who holds the property sued for as a bailment, such bailee may defend upon the title of his bailor; and his right to do so is not affected or impaired by the fact that the bailor aided in the defense by becoming surety on the forthcoming bond.

3. *Mortgagee and mortgagor; priorities of mortgagee's claims; estoppel.*—The fact that a part of the money advanced by the mortgagee in a mortgage given on a crop to obtain advances to enable the mortgagor to make the crop, was paid by the latter to another mortgagee who held a prior mortgage on the land upon which the mortgage was given, in the purchase of provisions to make said crop, and that such prior mortgagee of the land, at the time he received the money, knew the purpose for which it was advanced and that the mortgagor had executed the subsequent mortgage on the crop to obtain advances to make it, does not estop the prior mortgagee of the land, after a surrender thereof to him by the mortgagor on default in the payment of the mortgage debt, from asserting, as against the mortgagee of the crop, his superior title thereto.

APPEAL from the Circuit Court of Montgomery.
Tried before the Hon. JOHN R. TYSON.
The facts are sufficiently stated in the opinion.

GRAHAM & STEINER, for appellant.—There are at least four reasons why the court below should not have given the affirmative charge for the defendant, but should have given the affirmative charge for the plaintiff. 1st. There is no controversy but that the mortgage to Warren was valid and that the mortgage to Thompson was valid. If this be true, then to give force and effect to

both is the duty of the court. So the question, as to whether detinue was the proper action can not possibly arise ; for whether such crop was planted or not planted, the legal title was in Thompson and Company. We insisted that the mere fact that a year previous Chesson had mortgaged the lands to Warren does not prohibit him from mortgaging the crop to Thompson. Chesson was left in possession of the land. He was controlling it, using it, for his own purpose, and presumably for the purpose of paying off the mortgage to Warren ; and, under these circumstances, he had a perfect legal right to dispose of the crops or anything else grown upon the premises, just as if the property were not mortgaged. This must be the natural legal result, or else the decisions, which go to the extent of saying that a man can mortgage his crop, and the act of 1888-89, which says that the legal title is conveyed by such a transaction, are not the law.—*Hooper v. Payne,* 94 Ala. 223.

2d. The defendant was not entitled to the affirmative charge in this case, for the further reason, that, even though our contention in the first instance will not hold good, a part of this cotton was raised upon the homestead of C. W. Chesson, and Warren's mortgage upon the homestead was not valid for the reason that nowhere in the body of the mortgage does the name of Chesson's wife appear, but only that of Chesson does appear.—3 Brick. Dig. 297, § 2, and authorities cited.

3d. Warren by his act of knowingly permitting Chesson to mortgage his crops to Thompson and receiving a part of the money advanced by Thompson to Chesson is such a fraud upon Thompson as will prevent Warren and Company from asserting a superior claim to the crops.—Bigelow on Fraud, (Ed. 1887) p. 187.

4th. This is a suit against the Union Warehouse Company ; and, although we admit that in a suit of this character the defendant can connect himself with an outstanding better title in a third party, we insist that in this case he can not connect himself with Warren & Co., and that Warren & Co. are estopped from claiming this cotton, for the reason that they became the sureties upon the forthcoming bond of the warehouse company. Their act of becoming sureties estopped them from claiming that this property was subject to

this writ of detinue. Their remedy should have been a claim bond, or some outside party should have become surety upon this bond, and then the warehouse could have connected themselves with Warren, if possible, and showed a better title in their bailor than the plaintiff had.—*Brown v. Hamil*, 76 Ala. 506 ; *Roswald v Hobbie*, 85 Ala. 73.

W. A. GUNTER, *contra.*—1. There was an instalment. due and unpaid under the Warren mortgage, which gave the mortgagee the right of possession to which the mortgagor yielded.—*Fulgham v. Morris*, 75 Ala. 245 ; *Forrest v. Luddington*, 68 Ala. 15; *Johnston v. Buckhaults*, 77 Ala. 276.

2. After default the estate of the mortgagee in possession is at law that of owner.—*Toomer v. Randolph*, 60 Ala. 356 : *Hutchison v. Dearing*, 20 Ala. 793 ; *Coyle v. Wilkins*, 57 Ala. 108 ; *Downs v. Hopkins*, 65 Ala. 508 ; 2 Jones on Mortgages, § 1116. And he is accountable for crops and rents only in equity, on a bill to redeem.—*Bagnall v. Villar*, L. R. 12 Ch. D. 812; *Gillman v. Wills*, 66 Me. 273 ; *Reed v. Elwell*, 46 Me. 270.

HEAD, J.—Detinue by appellants for three bales of cotton. One Chesson, being the owner and in possession of certain lands, on the 21st day of December, 1892, executed a mortgage thereon to J. R. Warren & Co., to secure two notes for $1,000, each, the one payable October 5th, 1893, and the other November 5th, 1893. Upon default in the payment of either, Warren & Co. were authorized to take possession of the lands and sell the same for the payment of the mortgage debt. Default was made in payment of the first note, and on the 10th of October, 1893, Chesson, the mortgagor, surrendered possession of the land, with the crops growing thereon, to Warren & Co. under their mortgage. Warren & Co. then appointed Chesson their agent to gather the crops for them, and under this agency he gathered the three bales of ·cotton in controversy and stored them in appellee's warehouse for Warren & Co., where they remained until seized under the writ in detinue in this case.

On the 14th March, 1893, Chesson executed a mortgage to the appellants, Thompson & Co., upon the crops to be

grown by him upon said lands during that year, to secure a note then given for supplies, to enable him to make a crop that year. This note was made payable October 1, 1893, and the mortgagees were given power to take possession and sell on default. It is upon this mortgage title that appellants seek to recover the cotton in controversy from the bailee of Warren & Co. We think the action cannot be maintained upon well known principles of law. By the default of the mortgagor, the Warren mortgage became discharged of its condition on October 5th, 1893, and the estate of the mortgagee became absolute, subject only to an equity in the mortgagor to redeem the forfeiture, which a chancery court, to prevent hardships and injustice, would raise and enforce on application. Warren & Co. were then absolutely entitled to the land and its possession, as of their title of December 21st, 1892, created by the execution of the mortgage. This carried with it everything constituting a part of the freehold, at the time of the forfeiture ; for instance the crops then grown upon the land. There was no possession of the lands or crops adverse to them, as in the cases of *Cooper v. Watson*, 73 Ala. 252, where a futile effort was made to draw in question a disputed title to land, in an action of detinue for timber cut from it ; and *Hooper v. Payne*, 94 Ala. 223, where there was an adverse claim and possession of the cotton, at the time it was grown and severed. Here the possession of the land was in Chesson, the mortgagor, who held it in strict subordination to the Warren mortgage, and voluntarily surrendered it to the mortgagees, upon the forfeiture of the condition, together with the cotton in controversy then growing thereon, and which was by him thereafter severed from the freehold, not as his own, but expressly for the mortgagees, under the agency which had been created. There was no controversy as to the title to the land or its possession. The principles of law which vest the superior right in the mortgagees of the land, under these facts, are elementary, and we need not cite authorities in their support. It follows that the title of appellants, Thompson & Co., to the cotton cannot prevail in this action over that of Warren & Co.

Clearly a bailee, sued in detinue, may defend upon the title of his bailor ; and it makes no difference that

the bailor aided in the defense by becoming surety on the forthcoming bond given by the bailee. The authorities cited by appellants' counsel, on this point, have no application.

Nor do we think that the fact that part of the money advanced by Thompson & Co. to Chesson, under said note and mortgage given to them, was paid by Chesson to said Warren & Co. some time prevous to the 10th day of October, 1893, by check for $117, drawn by Chesson on Thompson & Co. and payable to Warren & Co. in September, 1893, for provisions &c., which he was using for the purpose of making a crop on said lands during the year 1893, and that Warren & Co. knew that Chesson had executed to Thompson & Co. a mortgage upon the crops for the purpose of securing the payment of the said mortgage, in any wise estopped Warren & Co. to assert their superior title to the cotton. There is no question raised of notice of the execution and existence of the Warren mortgage, on the part of Thompson & Co. The authority cited by appellants' counsel (Big. on Fraud, (Ed. of 1887), p. 187) is foreign to the subject.

Affirmed.