(83 South. 472)

## HUGHES & TIDWELL SUPPLY CO. v. CARR et al. (8 Div. 187.)

(Supreme Court of Alabama. Nov. 20, 1919.)

1. MORTGAGES ⬅191—FAILURE TO PAY PURCHASE PRICE INSTALLMENT MAKES MORTGAGEE'S RIGHT TO POSSESSION ABSOLUTE.

Where a mortgagee was authorized to declare the entire debt due on failure to pay purchase-price installments and to foreclose under power of sale, the mortgagee's estate became absolute on default in a purchase-price installment, subject only to an equity of redemption in the mortgagor, and mortgagee was then absolutely entitled to the land and its possession.

2. FRAUDS, STATUTE OF ⬅63(5)—MORTGAGES ⬅596, 597—ESTOPPEL TO ASSERT EQUITY OF REDEMPTION.

While an equity of redemption is regarded as an interest in the land, which cannot be transferred, except by writing, yet the mortgagor may estop himself from asserting the equity.

3. MORTGAGES ⬅296 — RELATION BACK OF MORTGAGOR'S DEED TO MORTGAGEE IN DETERMINING PRIORITY OF LANDLORD'S LIEN AND CROP MORTGAGE.

Where a mortgagor, defaulting in a purchase-price installment, agreed to become the mortgagee's tenant and deed back the land on a certain day, but was prevented from executing the deed until later, held, that the deed will be considered executed on the earlier date, in determining whether the mortgagee had a landlord's rental lien on the crops, which was superior to a crop mortgage given between the two dates.

4. MORTGAGES ⬅191—DEFAULT OF MORTGAGOR CREATES TENANCY AT WILL.

Where a mortgagor defaulted in paying a purchase-price installment under a mortgage authorizing the mortgagee to declare the entire debt due, etc., the mortgagor became, in the absence of contract, a tenant at will of the mortgagee.

5. CHATTEL MORTGAGES ⬅138(3)—PRIORITY OF LANDLORD'S LIEN OVER CROP MORTGAGE.

Where a mortgagor's default in a purchase-price installment made him the mortgagee's tenant at will, and such tenancy was converted by agreement into one for a fixed term, the landlord's lien for rentals on the crops was superior to the lien of a crop mortgage executed after the agreement creating a tenancy for a fixed term.

Appeal from Circuit Court, Lawrence County; O. Kyle, Judge.

Bill by the Hughes & Tidwell Supply Company against J. D. Carr and others, seeking to have a receiver appointed, for an accounting, creating a lien, foreclosing the mortgage, and for personal judgment over. From the decree rendered, complainant appeals. Affirmed.

The facts are sufficiently stated in the statement made by Brown, J. The decree overruled the demurrers of the respondent to the original bill as well as the demurrers of complainant to the answer and cross-bill. The question propounded by this appeal is whether the lien of appellants, under their mortgage from Carr, executed on the 5th day of January, 1915, and duly recorded in the probate office of Lawrence county on the 7th day of January, 1915, covering the crops grown by Carr during that year on the lands described in the bill, is superior to the rights or liens of McColloch, asserted by the cross-bill. The cross-bill advances two theories as establishing the superiority of the lien held by McColloch.

The first is that McColloch is the assignee of the mortgage executed by Carr to Bussey on the 29th day of January, 1914, covering the crops to be raised by, or that might accrue to, Carr during the year 1914, and "each successive year until the debt thereby secured is paid in full." The original bill alleges that the debt secured by this mortgage has been paid, and the lien created thereby discharged; but these averments are denied by the answer and cross-bill, and the issue thereby presented appears to be one of fact.

The second theory is that McColloch had a landlord's lien on the crops grown by Carr during the year 1915, for rents and advances, which is by the statutes made paramount to all other liens. The facts upon which the assertion of this lien is predicated are: McColloch, being the owner of the land upon which the crops were grown in the year 1913, sold and conveyed them to Carr, for and in consideration of $65, paid in cash, the assumption of an outstanding mortgage held by an insurance company, and $800, to be paid, $300 in the fall of 1914, $300 in the fall of 1915, and $200 in the fall of 1916; McColloch executing and delivering to Carr a deed to the land. Contemporaneously Carr executed and delivered to McColloch a mortgage to secure these deferred payments. By the terms of the mortgage it was provided that, in case of default in the payment of any one of such installments, the mortgagee was authorized to declare the entire debt due, and to proceed to a foreclosure under the power of sale contained therein.

Carr defaulted in the payment of the first installment, and in the later part of November or the first of December, 1914, informed McColloch that he could not meet the payments on the mortgage debt. At this time they entered into an agreement, as the cross-bill avers, "to avoid delay, trouble, and expense of a foreclosure of said mortgage," by which Carr agreed to pay $265 rent for the land for the year 1914: McColloch allowing as a credit on this the $65 previously paid by Carr at the time of the purchase of the

land. Carr then turned over to McColloch the land conveyed by the mortgage, in consideration that McColloch's debt against him, as evidenced by said mortgage, should be treated as satisfied, and "McColloch then took over said land, and possession thereof, or right of possession, and assumed control and ownership thereof."

It is alleged that said agreement was entered into in good faith, and that the amount agreed to be paid as rent for the land for the year 1914 was reasonable, and that the value of the land was not in excess of the amount of the indebtedness secured by the mortgage, and that said contract or agreement was intended as, and to take the place of, in law and equity, a foreclosure.

After this agreement was made, and Carr had attorned to McColloch for the rent for the year 1914, Carr opened up negotiations with McColloch to rent the land for the year 1915, and these negotiations continued until the 28th day of June, 1915, then culminating in a contract of rental by Carr of the land for said year, and on this date Carr executed and delivered to McColloch a deed to the land.

Tennis Tidwell, of Albany, for appellant. Under the allegations of the bill the relation of vendor and vendee obtained between Carr and McColloch until Carr executed his deed to McColloch. 111 Ala. 159, 20 South. 507; 127 Ala. 352, 28 South. 716; 200 Ala. 975, 76 South. 976. The mortgage from Carr to McColloch reserved an equity of redemption, which could not be conveyed except by instrument and right. 84 Ala. 317, 4 South. 31; 91 Ala. 310, 9 South. 157; 85 Ala. 476, 5 South. 145; 121 Ala. 191, 25 South. 920; 176 Ala. 134, 57 South. 705. The execution of the deed was the last act in the making of the contract, and hence the contract is not completed until the execution of the deed. 86 Me. 248, 29 Atl. 1063, 41 Am. St. Rep. 545; 12 Wyo. 369, 75 Pac. 937, 66 L. R. A. 812, 109 Am. St. Rep. 992; 190 Mass. 101, 76 N. E. 727.

Callahan & Harris, of Decatur, for appellee. In order for a mortgage to be valid, the mortgagor must have an actual or potential interest in the thing mortgaged. 166 Ala. 342, 51 South. 974; 189 Ala. 546, 66 South. 480; 71 Ala. 288. Contracts for land or interest therein are valid, whether in writing or not, if a part of the purchase money is paid and the purchaser put in possession. Section 4289, Code 1907; 71 Ala. 62; 47 Ala. 714; 84 Ala. 598, 4 South. 589. The equitable estate was invested in McCulloch, and the legal title was a mere shadow following the equitable estate. 1 Pomeroy, 685; 19 Ala. 481; 66 Ala. 158. Appellant cannot be heard to complain that no deed was made at the time of the sale. 71 Ala. 62; 82 Ala. 622,

2 South. 520; 155 Ala. 501, 46 South. 769; 178 Ala. 303, 59 South. 485.

BROWN, J. [1] By the default of the mortgagor, the McColloch mortgage was discharged of its condition on December 1, 1914, and the estate of the mortgagee became absolute, subject only to an equity in the mortgagor to redeem from the forfeiture, which a court of equity, to prevent hardship and injustice, would raise and enforce on his application. McColloch was then absolutely entitled to the land and its possession as of his title of February 14, 1914, created by the execution and delivery of the mortgage. Thompson & Co. v. Union Warehouse Co., 110 Ala. 499, 18 South. 105; Dennis v. McEntire Mercantile Co., 187 Ala. 314, 65 South. 774.

[2] While this equity of redemption is regarded as an interest in the land, and where it arises by express reservation, or necessary implication from the terms of the mortgage, it cannot be transferred, except by an instrument in writing, containing apt words of transfer, yet the mortgagor can, by conduct inconsistent with the right to assert this equity, be estopped from asserting it. McMillan v. Jewett, 85 Ala. 476, 5 South. 145.

[3-5] For the purposes of this case, conceding that the effect of the transaction occurring between the mortgagor, Carr, and the mortgagee, McColloch, on or about December 1, 1914, was inefficacious to release, transfer, or convey the equity of redemption out of the mortgagor, yet by this transaction Carr induced McColloch to accept the land back in full satisfaction of the mortgage debt, to release him therefrom, and to restore to him as rent a part of the purchase money already paid. The value of the land, according to the averments of the bill, was not disproportioned or in excess of the amount due, and the rent agreed to be paid was not in excess of what was reasonable. The transaction was free from any taint or imputation of fraud, and under these circumstances it would seem a court of equity would not permit Carr to repudiate his trade and assert the equity of redemption, if he sought to do so.

Moreover, the cross-bill avers:

"The further agreement was that McColloch was to take the land back in full settlement of the mortgage debt without any sale thereunder, and Carr was to execute a deed to McColloch, which deed *was to be executed at once*, [but] *owing to the sickness of Carr's wife, and other matters intervening causing delay, the deed was not executed until January 28, 1915.*"

A court of equity, applying the maxims that equity regards substance rather than form, and treats as done that which ought to have been done to carry into effect the intention of the parties, will give effect to the transaction by fixing the status and rights

of the parties as if the deed was executed on the date it should have been executed. Randall v. White, 84 Ind. 509; Hasbrook v. Paddock, 1 Barb. (N. Y.) 635; 16 Cyc. pp. 134, 135, pars. E and F; Mewburn v. Bass, 82 Ala. 622, 2 South. 520.

However, independent of these principles, after default of the mortgagor, in the absence of contract, he became a tenant at will of the mortgagee, and the mortgagee, by an active assertion of his right, was entitled to the possession of the land, and the rents, incomes, and profits therefrom. Welsh v. Phillips, 54 Ala. 309, 25 Am. Rep. 679; Sadler v. Jefferson, 143 Ala. 669, 39 South. 380; Comer v. Sheehan, 74 Ala. 452; Lamar v. Johnson, 16 Ala. App. 648, 81 South. 140.

We know of no rule of law, or principle of equity, that would deny to the parties the right, by contract entered into in good faith, to convert the tenancy at will into a tenancy by contract, or for a term; and we hold the effect of the agreement between McColloch and Carr, entered into about December 1, 1914, was to convert the tenancy at will into a tenancy by contract, under which Carr attorned to McColloch by paying rent for the year 1914. Therefore, whatever possession, or right of possession, Carr had or exercised in the land on January 5, 1915, when complainants' mortgage was executed, was as the tenant of McColloch, and the complainants were not innocent purchasers without notice, in the sense that their mortgage created a lien superior to McColloch's lien as landlord on the crops for the year 1915 for any rent due, or advances made, remaining unpaid. Waite, Lafils Co. v. Corbin, 109 Ala. 154, 19 South. 505; British & American Mortgage Co. v. Cody, 135 Ala. 622, 33 South. 832; Bush v. Willis, 130 Ala, 395, 30 South. 443; McLellan v. Roberson, 171 Ala. 122, 55 South. 99.

Whether McColloch has a lien under the Bussey mortgage, superior to that of complainants, depends on whether the debt secured thereby has, or has not, been paid, and McColloch's ownership thereof. These questions are presented in the form of issues of fact by the pleadings, and the law applicable thereto is well stated in Whaley v. Bright, 189 Ala. 134, 66 South. 644, and authorities there cited.

Applying what is said above, the result is that the demurrers to the cross-bill were properly overruled, and the decree appealed from is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE, J., concur.

GARDNER, J., rests his concurrence as to the result on the authority of Thompson & Co. v. Union Warehouse Co., 110 Ala. 499, 18 South. 105.