## GILLESPIE v. BARTLETT & BYERS.
### (7 Div. 464.)

(Supreme Court of Alabama. May 29, 1924. Rehearing Denied June 30, 1924.)

**1. Detinue ⬤➡16—Where claimant intervenes, issue is legal title and possession, and burden of proof on plaintiff.**

Where claimant in detinue intervenes, issue, as between claimant and plaintiff, is legal title and right to possession of chattels sued for, and burden of proof is on plaintiff.

**2. Chattel mortgages ⬤➡68—Admission by one joint and several mortgagor held sufficient to charge him, without producing or accounting for attesting witness.**

Under Code 1907, § 4006, testimony by one joint maker or grantor of attested instrument is insufficient, unless attesting witness is produced or accounted for, but, where chattel mortgage was joint and several, testimony of one mortgagor admitting its execution was sufficient to give mortgage effect as against him without production or accounting for witness.

**3. Trial ⬤➡82—General objection that execution of chattel mortgage not proved held insufficient.**

General objection to introduction of chattel mortgage, that its execution had not been proved, held not sufficient, but objection should have been made to witness' testimony.

**4. Chattel mortgages ⬤➡138(3)—Lien crops held superior to landlord's lien, where relation of landlord and tenant was subsequently created.**

Where claimant intervened in detinue by chattel mortgagee of crops on his landlord's lien for rent, held that, if landlord's lien antedated chattel mortgage, delivery of crops to landlord gave landlord legal title superior to mortgagee's, but mortgage was superior to landlord's lien, where relation of landlord and tenant did not begin until after chattel mortgage was executed.

### On Rehearing.

**5. Chattel mortgages ⬤➡157(2)—Evidence held to warrant finding defendant became claimant's tenant after chattel mortgage lien was created.**

In detinue by chattel mortgagee of crops, wherein landlord intervened, evidence held to warrant finding defendant became claimant's tenant after chattel mortgage lien was created.

**6. Appeal and error ⬤➡1012(1) — Finding by trial court sitting without jury not disturbed unless clearly against weight of evidence given ore tenus.**

Under Acts 1915, p. 824, finding of fact by trial court sitting without jury, where evidence

is given ore tenus, will not be disturbed, unless palpably contrary to great weight of evidence.

Thomas, J., dissenting.

Appeal from Circuit Court, Etowah County; Woodson J. Martin, Judge.

Action in detinue by Bartlett & Byers against T. W Ross and W. D. Ross—W T. Gillespie, claimant. Judgment for plaintiffs, and claimant appeals. Transferred from Court of Appeals under Acts 1911, p. 449, § 6. Affirmed.

H. G. Bailey, of Boaz, for appellant.

Execution of the mortgage was not proven, and its admission in evidence was error. Stamphill v. Bullen, 121 Ala. 250, 25 South. 928; Jones on Evi. 545; Code 1907, § 4006. In the claim suit, the burden of proof was on the plaintiffs. Code 1907, § 3792; Hesk v. Ellis, 200 Ala. 17, 75 South. 329; Beal v. McKee, 150 Ala. 478, 43 South. 235; Downs v. Bailey, 135 Ala. 329, 33 South. 151; Cable Co. v. Griffitts, 160 Ala. 315, 49 South. 577, 135 Am. St. Rep. 100; Ryall v. Pearson Bros., 148 Ala. 668, 41 South. 673; Berlin M. Wks. v. Ala. City F. Co., 112 Ala. 488, 20 South. 418. Judgment should have been rendered for claimant. Wilson v. Windham, 206 Ala. 427, 90 South. 791; Keyser v. Maas, 111 Ala. 390, 21 South. 346.

Culli & Hunt, of Gadsden, and Jos. P. Brown, of Boaz, for appellees.

Defendant T. W. Ross owned the land at the time of executing the mortgage, and claimant's lien was subordinate to that of plaintiffs. Mecklin v. Deming, 111 Ala. 162, 20 South. 507; Shows v. Brantley, 127 Ala. 354, 28 South. 716; Herzfeld v. Hayne, 200 Ala. 617, 76 South. 973; Bank v. Howell, 165 Ala. 385, 51 South. 762. The chattel mortgage of plaintiffs was properly admitted upon evidence of the maker. Code 1907, § 4006.

SOMERVILLE, J. The appellees Bartlett & Byers sued T. W. Ross and W. D. Ross in detinue for three bales of cotton, and a quantity of corn and fodder. Plaintiffs' claim is based on a mortgage executed to them by defendants on March 17, 1921, securing a debt of $1,000, which conveyed to plaintiffs the legal title to this property, and which was in default on November 21, 1921.

The property was seized under a writ of detinue, and thereupon the appellant, W. T. Gillespie, intervened as claimant, filing his affidavit and bond as required by law, setting up that this property was raised on his land during the year 1921, and was delivered to him by W. D. Ross, defendant, before its seizure under process; his claim being based on "a landlord's lien for rent."

[1] Thereupon an issue was made up; plaintiffs alleging that they had the legal title to the property in suit and the right of immediate possession. This was the proper issue, and the burden of proof was on the plaintiffs. Keyser v Maas, 111 Ala. 390, 21 South. 346. This constitutes a new and collateral cause which—

"stands for trial between plaintiff and claimant as though they were original parties plaintiff and defendant, respectively, to a statutory action of detinue—an action involving, not the right to subject property to the satisfaction of a debt as in case of a levy of attachment or execution, but only the legal title and the right of possession of specific property." Slaughter v. Webster, 194 Ala. 642, 644, 70 South. 128, 129; Hesk v. Ellis, 200 Ala. 16, 75 South. 329.

[2] Plaintiffs offered in evidence the chattel mortgage, as above described, after showing by T. W. Ross that he and his son, W. D. Ross, executed the mortgage. The mortgage was attested by one witness, and claimant objected to its introduction in evidence on the ground "that its execution had not been proven," which objection was overruled. Section 4006 of the Code provides that—

"The execution of any instrument of writing attested by witnesses may be proved by the testimony of the maker thereof, without producing or accounting for the absence of the attesting witnesses."

This changes the common-law rule which required that proof of any attested instrument should be made by the attesting witness, or that otherwise his absence should first be accounted for. Ellerson v. State, 69 Ala. 1; Russell v. Walker, 73 Ala. 315; Askew v. Steiner, 76 Ala. 218.

[3] Where an attested instrument is executed by more than one grantor or maker, and its validity and effect depend upon their joint execution—the attesting witness not being produced or accounted for—the testimony of one of the parties that he and the other or others signed it is not sufficient to prove it. Stamphill v. Bullen, 121 Ala. 250, 25 South. 928. But the chattel mortgage here exhibited was clearly a joint and several instrument, and the testimony of T. W. Ross that he executed it was sufficient proof to admit it as his own act and deed, and to give it effect accordingly. It of course did not render it effective as the proven act and deed of his comortgagor, W. D. Ross. But, since the property here involved was the property of T. W. Ross, W D. Ross' execution of the mortgage, vel non, was wholly immaterial. Moreover, even if available, the objection should have been made to the witness' testimony. A general objection to the mortgage that "its execution had not been proven" was not sufficient. Houston Nat. Bank v. Edmonson, 200 Ala. 120, 75 South. 568. The mortgage was properly admitted.

The issue was upon the legal title and right to possession of the chattels sued for, and plaintiffs' legal title necessarily prevailed over the landlord's lien upon which

211 Ala.—36

claimant relied, whether the lien was acquired before or after the mortgage was executed to plaintiffs. Houston Nat. Bank v. Edmonson, 200 Ala. 120, 75 South 568. Nor could that result be affected by the fact that the property was delivered by the mortgagor to claimant for the satisfaction of his rent claim after plaintiffs' legal title was acquired. Id.

[4] This is the view of the writer and of Gardner, J. A majority of the court, however, are of the opinion that, if the claimant's lien antedated the plaintiffs' mortgage, a delivery of the crops to the landlord by the tenant gave to the landlord a legal title or right of possession superior to that of the mortgagee. But all of the justices are agreed that under the evidence before the trial judge he could have properly found that the relation of landlord and tenant did not begin until Ross reconveyed the land to the claimant, Gillespie, and executed to him his rent note, on July 23, 1921. On that theory of the evidence, plaintiffs' mortgage was superior to the claimant's lien subsequently acquired, and the judgment so declaring will not be disturbed.

The judgment rendered was proper in form and in substance, and was, indeed, the only judgment that could have been rendered in a detinue suit. Slaughter v. Webster, 194 Ala. 642, 644, 70 South. 129.

We find no error in the record, and the judgment will be affirmed.

Affirmed.

All the Justices concur.

### On Rehearing.

[5] Counsel for appellant is in error in his assumption that the evidence shows without dispute that Ross became the tenant of Gillespie, either presently or potentially, by contractual agreement between them made about the first of the year 1921.

Ross himself testified that—

"He was in possession *and owned* this land in 1920 and 1921." (Italics supplied.)

He further stated:

"That he did not really know just when he rented this place from Dr. Gillespie, because he fell down that fall on his payments; that he told Dr. Gillespie that he would just stay there; that he was trying to get some money; that if he got the money he would make the payment, and if he didn't he would deed the place back to him; that he fell down on the payment and deeded the place back."

On cross-examination by defendant, the witness further said:

"That he had a conversation with Dr. Gillespie about this defaulted payment along the latter part of 1920 or the first part of 1921. That he told Dr. Gillespie in that conversation that if he failed to get the money the only thing he could do would be to deed the land back to him and rent it, that he wanted to stay there

that year, and Gillespie told him just to stay ahead, and, 'if I failed to get the money, we would have to make some other arrangements.' I then told him that if I failed to get the money I would pay him rent on this land for the year 1921, and he told me that he would give me a chance on it, to try it."

This testimony falls short of showing with reasonable clearness that Ross then and there contracted with Gillespie to become his tenant for the year 1921, automatically upon his failure to get the money needed to pay off the mortgage debt; and, coupled with the conduct of the parties in the reconveyance of the land, and the execution of a rent note, in July, 1921 it supports a reasonable inference that they had no intention of initiating the relation of landlord and tenant until they took that action in July, and that in the meantime they were simply leaving matters in statu quo by an indefinite extension of the mortgage debt. This view is confirmed by the absence of any understanding (under Ross' testimony) as to the amount of rent to be paid if they should in future "make other arrangements," or as to the time when such arrangements were to be made.

It is true that Gillespie's testimony is in sharp conflict with Ross'; for Gillespie testified that when Ross came to him about the first of the year (1921), Ross then said that he had failed to pay, and would therefore deed the place back and rent it, to which he (Gillespie) agreed. But the trial court was not bound to believe that version of the transaction, and may well have accepted the other.

[6] In urging that under Act Sept. 25, 1915 (Gen. Sess. Acts 1915, p 824), this court is required to review judgments of the trial court, sitting without a jury, "with no presumption in favor of the finding of the trial court on the evidence," counsel overlooks the fact that this court has uniformly held that this provision can have no application where the evidence was given ore tenus, or partly so, and the trial court has the advantage of seeing and hearing the witnesses. In such cases—

"this court will not disturb the conclusion unless it is plainly and palpably contrary to the weight of the evidence." Hackett v. Cash, 196 Ala. 405, 72 South. 52; Halle v. Brooks, 209 Ala. 486, 96 South. 341, citing many cases.

It is difficult to see how the statement by Ross that, when he got a deed to this land from Gillespie, he "made Gillespie a mortgage on the land," which was in default in the fall of 1920, can affect the rights of the parties in this proceeding. This mortgage, if it in fact existed, was not offered in evidence, and was not before the court; and there was absolutely nothing in the evidence to show that it was an instrument containing apt words of legal conveyance, nor to

show that it was executed in the manner and form required by law for the conveyance of the legal title, and the trial court was not authorized to presume that it was effective for such a purpose. It is to be observed, also, that it does not appear that it was recorded, nor that plaintiffs, who were purchasers of the growing crops for ·value, had any actual notice of the existence of such an instrument.

These considerations effectually dispose of the argument of Gillespie's prior right, based upon his supposed right to the possession of the land as mortgagee of the legal title after default—a status which, as we have shown, finds no support in the evidence. The comparative status of Gillespie's landlord's lien is therefore not aided or improved by the predicate of a legal title to the land, carrying with it the right of possession, prior to the inception of the chattel mortgagees' title to the growing crops.

· Our view of the evidence excludes the application of the principle announced in the cases of Waite v. Corbin, 109 Ala. 154, 19 South. 505, and B. & A. Mort. Co. v. Cody, 135 Ala. 622, 33 South. 832, cited and relied on by counsel for appellant. In those cases there was a sale of the land on deferred payments, with a definite present stipulation that in case of default the purchaser should occupy as tenant, and be chargeable with a stipulated sum for rent, as from the date of the sale; and it was held that an intervening chattel mortgage on the crops would be subordinate to the landlord's lien created by the purchaser's subsequent default—a different situation from that of the instant case.

The application will be overruled.

All the Justices concur, except THOMAS, J., who dissents.

THOMAS, J. The claimant, Gillespie, was in the status of a mortgagee in possession of the mortgaged premises after the law day and default in payment. He was entitled to the rents (not specifically pledged) for the year in which the possession was taken. The relations of claimant, Gillespie, and Ross arose out of the sale of land and mortgage for the purchase price due in the fall of 1920, which was defaulted, and thereafter the agreement of tenancy entered into on January 1, 1921.

When the mortgagor is allowed to remain in possession after the law day, he is entitled to take the rents and profits, unless (1) they are specifically pledged, or (2) unless the mortgagee claims or intercepts them by exercising his legal or equitable·remedies— (A) by notice to the tenant to pay the rents to him as they accrue, (B) by entry on the land, as by recovering the possession by action at law, or (C) by foreclosure in equity, with or without the appointment of receiver. Coker v. Pearsall, 6 Ala. 542; Scott v. Ware,

65 Ala. 174; Comer v. Sheehan, 74 Ala. 452; Falkner v. Campbell, 74 Ala. 359; Roulhac v. Jones, 78 Ala. 398; Strauss v. Harrison, 79 Ala. 324; Perkerson v. Snodgrass, 85 Ala. 137, 4 South. 752: Mortgage Co. v Turner, 95 Ala. 272, 11 South. 211; Ala. Nat. Bk. v. Mary Lee C. & Ry. Co., 108 Ala. 288, 19 South. 404. The same rule applies to a trust deed declared to be a mortgage. Lyon v. Powell, 78 Ala. 351; 4 Encyc. Dig. p. 144, § 1174.

In Draper v. Walker, 98 Ala. 310, 13 South. 595, it is declared that an action for trover or case cannot be maintained by a second mortgagee or his privy against a person who is in possession of personal property by purchase from a first mortgagee; that after default the legal title passes to the mortgagee, and nothing remains in the mortgagor but the equity of redemption, and the outstanding legal title is in the first mortgagee, superior to that of plaintiff holding under the second mortgagee. The reason for such rule is that the second mortgagee takes no greater title than the mortgagor has—a mere equity. Foster v. Carlisle, 148 Ala. 259, 42 South. 441.

The rights and liabilities as between different mortgagees have been the subject of discussion by this court. A first mortgagee having taken possession of the mortgaged property without objection or by consent of the mortgagor, his right to rents accruing during that possession before the filing of a bill by the second mortgagee was the subject of Falkner v. Campbell, supra. There is analogy to this case in the holding that, the first mortgage being declared void, there was a liability to the second mortgagee for rents. It is there said:

"The principle is too well settled in this state, either for controversy or discussion, that the mortgagor is the owner of the mortgaged premises, as against all the world except the mortgagee. He is therefore entitled to the rents, incomes, and profits of the mortgaged property, so long as the mortgagee fails to disturb his possession or right by the interposition of a legal claim to them. This claim may be made, as is well settled, by filing a bill for foreclosure, accompanied with the appointment of a receiver, by taking possession, or by otherwise giving notice in the nature of a demand. Johnston & Stewart v. Riddle, 70 Ala. 219; Scott v. Ware, 65 Ala. 174."

The cases of Scott v Ware, supra, and Johnston & Stewart v. Riddle, 70 Ala. 219, were mortgages on real and personal property. In Cook, Adm'r, etc., v. Parham & Blunt, 63 Ala. 456, it was held:

"When the mortgagor dies in possession of the mortgaged premises, his widow is entitled to remain in possession, taking the rents and profits, until her dower is assigned, or until the mortgage is foreclosed; and she will not be charged with rents and profits, as a mortgagee in possession, at the suit of another mortgagee,

because she took an assignment of the mortgage after her husband's death."

When the mortgagor and mortgagee changed their relation as to the lands (as they had the right to do after the law day of the mortgage) to that of landlord and tenant, the latter rightfully delivered the accruing rent to the former. This he may do despite the chattel mortgage given on the crops to be grown on the mortgaged premises. It will be noted that the chattel mortgage was given on July 23, 1923, after the law day of the first mortgage and default was made in payment of that mortgage.

Thus we are brought to a consideration of five decisions by this court: Waite, LaFils & Co. v. Corbin, 109 Ala. 154, 19 South. 505; British & American Mortg. Co. v. Cody, 135 Ala. 622. 33 South. 832; Mecklin v. Deming, 111 Ala. 159, 20 South. 507; Hughes & Tidwell Supply Co. v. Carr, 203 Ala. 469, 83 South. 472; Shows v. Brantley (1899), 127 Ala. 352, 28 South. 716.

In Waite, LaFils & Co. v Corbin, supra (1895), the theory of the defense was that a mortgagee who takes a mortgage upon a crop to be planted or growing, without any notice that the mortgagor in occupancy of the land is or may become a tenant as to the crops by reason of the contract under which he obtains possession of the land and the right to plant the crop, is an innocent purchaser in the sense that his mortgage lien is superior to that of the landlord. It was held that the plea did not present a defense to the complaint; that the fact that the mortgagee may have believed that the mortgagor-tenant was the owner of the land, and that the chattel mortgage was taken in good faith, cannot avail him against the right of the landlord, when his action was not affected in any way by the landlord. The court said:

"The fact that the tenant declared that he owned the land, or the mortgagee may have believed that he was the owner, and took his mortgage in good faith, his belief and action not having been superinduced by the landlord, cannot avail against the right of the landlord."

The relation of the parties on which this decision is predicated was that of a contract of sale of lands, with deferred payment, and which contained a condition for re-entry on default. There was default, after the giving of the mortgage by said vendee, and the title to said rents was held to be in the landlord as against that of such mortgagee.

The next case in the order cited is British & American Mortg. Co. v. Cody (1902) 135 Ala. 622, 33 South. 832, where was applied the rule of the Waite-Corbin Case, supra, upon a similar sales contract, which provided that upon default the relation of landlord and tenant should immediately arise between the parties for one year, to begin from the specific date stipulated.

The two cases should be distinguished from that in which a deed is given and subsequently the land is deeded back to the first grantor, and a tenancy created at the time of such reconveyance by agreement of that date. In the latter case a chattel mortgage, on the crop grown on the land, given before default, and such agreement of tenancy and reconveyance of the land, was held to take precedence (Mecklin v. Deming, 111 Ala. 159, 20 South. 507); that is to say, the title to the crop having passed from the "tenant" or grantor in the mortgage into said mortgagee before the "landlord" acquired the land by its reconveyance, and before the relation of landlord and tenant was created, therefore, before the inception of the rent lien, there was nothing for the lien to fasten upon save the tenant's equity. This is in effect opposed to the result the court now announces. It was shown that said chattel mortgage in Mecklin v. Deming, supra, had been recorded prior to the reconveyance, and therefore the landlord had notice thereof when the premises were reconveyed. He was held to have taken the reconveyance or purchased the land subject to the incumbrance of the chattel mortgage on the growing crop, or subject to the right of the mortgagee in respect of any crop which might be grown on the land by the tenant that year. Such was the rule applied to the purchase of property where the purchaser had notice of the mortgage. Shows v. Brantley (1899) 127 Ala. 352. 28 South. 716; First Nat. Bk. v. Howell, 165 Ala. 383, 51 South. 762.

In the instant case the purchase money was secured by mortgage, and deed was made to the vendee and duly recorded. The mortgage was due in the fall of 1920, and there was default, and the promise to give time that fall for further effort for payment. Failing in that behalf, in December, 1920, or the 1st of January, 1921, the parties agreed on resurrender of the possession, and their relation became that of landlord and tenant. This is shown by Ross' testimony as follows:

"That he had a conversation with Dr. Gillespie about this defaulted payment along the latter part of 1920 or the first part of 1921. That he told Gillespie in that conversation that, if he failed to get the money, the only thing he could do would be to deed the land back to him and rent it, that he wanted to stay there that year, and Gillespie told him just to stay ahead, and, if I failed to get the money, we would have to make some other arrangements. I then told him that if I failed to get the money that I would pay him rent on this land for the year 1921, and he told me that he would give me a chance on it, to try it. This was in the fall of 1920, either just before or just after Christmas. Mr. John Pullen was present and heard this conversation between us. I did not get the money and fell down on this payment. I paid him rent on this land for the year 1921. I did not pay him any rent for the year 1920.

After our conversation, I stayed on this place for the year 1921 and paid him rent for that year. I paid him rent in the fall of 1921."

Dr. Gillespie testified:

"He [Ross] came to my office again the latter part of December or first of January, 1921, and said that he had failed to pay me and would rent the place and give me a deed back to it. I told him that I agreed to that. This was in January, 1921. The last conversation I had with him about it was in February, 1921, at Gadsden. He told me there that he would sign the deed whenever I fixed it. I told him I would fix the deed right away, but I did not do it then."

The witness to the conversation, Mr. Pullen, testified:

"That this was about January 1, 1921, and that there were present upon this occasion Ross, Gillespie, and the witness only That Ross was talking about what he owed Gillespie, and Gillespie told Ross it looked like the shape that he was in he couldn't carry it on, that he would have to have a little money and Ross said that he thought he could get some money, and that, if he didn't all he could do would be to deed the place back to Gillespie. Ross further told Gillespie in that conversation that he wanted to stay on the place, that he had got to stay somewhere, and that he would just rent the place from Gillespie."

The fact that the chattel mortgagee believed that his mortgagor (Ross) owned the land cannot avail him against the right of Dr. Gillespie, shown by the foregoing evidence to have been the landlord since January, 1921. The relation of the parties was not affected in any way by the landlord, but by the default of Ross in payment of his mortgage—the failure of his title. The holding of the majority has limited the right of the mortgagee in possession after default (the landlord), and its effect is to make superior thereto a mortgage taken without actual notice of the defect of mortgagor's title. This defect he is held in law to have known. It cannot with reason be said that the mere record of the chattel mortgage, taken and recorded after default had been made on the prior mortgage and possession surrendered, gained ascendency over the true owner of the land, merely because the parties thereto assumed the relation of landlord and tenant in accord with their prior relations, of which plaintiff is held to have had notice or knowledge.

The case, in principle, is not to be differentiated from Hughes & Tidwell Supply Co. v. Carr, 203 Ala. 469, 83 South. 472. The instant agreement did not postpone the relation—of mortgagee and mortgagor in default and possession surrendered—and make it conditional upon a future contingency or default in the payment of the purchase price during the year 1921. The time given was for 1920. That default existed, and all the rights and liabilities and defects of title of the respective parties existed and were affected by that default, when plaintiff's mortgage was taken in July, 1921.

The failure to pay the purchase price installments makes the mortgagee's right of possession absolute. (1) This right existed before plaintiff's mortgage was executed and of which the latter had notice; (2) the agreement of the parties to the first mortgage related to their deed of reconveyance—this was the legal effect of the default and taking possession by mortgagee; (3) it was the default of which plaintiff is held to have had knowledge, or the means of knowing by virtue of the title and possession, that created in the common mortgagor a tenancy at will for 1920; (4) this relation of all the parties should be given the just result of allowing the loss to fall on him who sought security from a mortgagor who had only been a tenant at will during the fall of 1920. Hughes & Tidwell Supply Co. v Carr, 203 Ala. 469, 83 South. 472; Avant v. Adams, 16 Ala. App. 122, 75 South. 714. This intervention is under the statute; yet it is in nature an equitable action, and should determine the respective rights of the parties.

I cannot agree with my Brothers.