172 So. 104

**LEETH NAT. BANK v. ELROD et al.**

6 Div. 979.

Supreme Court of Alabama.

Jan. 14, 1937.

W. Marvin Scott, of Cullman, for appellant.

St. John & St. John, of Cullman, for appellees.

ANDERSON, Chief Justice.

The bill as last amended seems to have been drawn in the light of Patton et al. v. Darden, 227 Ala. 129, 148 So. 806, the doctrine of which was reaffirmed and applied in Kelley v. Woodley, 228 Ala. 401, 153 So. 745. The basis of the doctrine there asserted is that, where one has a lien on chattels and the right to charge the same for his use in the satisfaction of a debt secured by the lien, and the debtor has the legal title and possession, the property is affected with a trust, and, if the debtor converts or disposes of the property to another in such sort as to destroy the lien and prevent its enforcement, the jurisdiction and powers of a court of equity may be invoked to charge the person or persons who, with notice or knowledge of such lien, received the benefit of such property as trustee or trustees in invitum, and require him or them to account, unless such person or persons can show a paramount equity in the property. Peters et al. v. Rhodes et al., 157 Ala. 25, 47 So. 183.

Where, however, it appears that the creditor is secured by a mortgage which passes to him the legal title, he has an adequate remedy at law, and, unless he can show that the trust property or some part thereof is in the hands of the defendant, so that the processes of the court may reach the property, itself, or some part thereof, and foreclose thereon, courts of equity will not intervene. Chambers v. Chambers, 98 Ala. 454, 13 So. 674; J. E. Butler & Co. et al. v. A. G. Henry & Co., 202 Ala. 155, 79 So. 630; Hanson v. Luther, 229 Ala. 256, 156 So. 771.

The circuit court denied complainant relief and dismissed its bill on the ground that it had failed to carry the burden of showing that J. B. Elrod had such interest in the lands on which the crops were grown on December 26, 1931, as empowered him to give a valid lien or mortgage on the crops of 1932.

The complainant, appellant here, relies on the documentary evidence consisting of the mortgage note, the depositions of King and Dunlap, the answer of Elrod to the interrogatories filed under the statute, and the admissions of the defendants in the unsworn answers to the bill, while the respondents rely on the defensive matter set up in said answers, the answers being noted by both parties "as evidence."

It is well settled that, when the complainant notes a ·part of the defendant's answer "as evidence," the defendant may .make the whole answer evidence by so noting the same. Daughdrill v. Lockhart, 181 Ala. 338, 61 So. 802; Dillard v. Gill, 231 Ala. 662, 166 So. 430; Crawford et al. v. Kirksey et al., 50 Ala. 590; Scott, Adm'r, v. Brassell, 132 Ala. 660, 663, 32 So. 694.

The evidence is without dispute that J. B. Elrod, who was then the owner of the land on which the crops were grown, on February 8, 1930, his wife joining therein, executed a mortgage on said lands to the defendant McKoy to secure an indebtedness maturing on the 1st day of January, 1931; that Elrod defaulted in the payment of said · mortgage, and, without notice to quit, entry by the mortgagee McKoy for conditions broken, or foreclosure, said Elrod was allowed to remain in possession as owner and cultivate said lands through and by his own tenants during the year 1932; that the five bales of cotton, the subject of this controversy, were raised on said lands by Elrod or his tenants.

In the circumstances stated Elrod had such present interest in said land at the time he executed the mortgage on the crops to the complainant as enabled him to give a valid mortgage on said crops. J. E. Butler & Co. et al. v. A. G. Henry & Co., supra.

The defendants, as appears from the face of the pleading, seem to recognize that the complainant has a superior claim under its. equitable mortgage, unless the defendant McKoy has a statutory lien for rent or for. use and occupation, or there had been a waiver or abandonment of the complainant's equitable lien or title evidenced by the mortgage and note of December 26, 1931, by taking subsequent mortgages in satisfaction of the mortgage debt secured by said equitable lien or title.

To sustain their contention that the defendant McKoy had such lien, they rely on the averments of the unsworn answer, made evidence by the parties in noting the same.

Elrod's answer avers "that in the early part of the year 1932, the mortgagee, Mrs. D. O. McKoy, gave notice to this respondent and to the tenants of this respondent, to pay the rent on said lands for the year 1932 to Mrs. D. O. McKoy; that in compliance with and pursuant to said notice this respondent *instructed and agreed for the tenants* to deliver the rent or five bales of cotton to Mrs. D. O. McKoy, which said cotton was grown on said lands during the year 1932." (Italics supplied.)

The answer of the defendant McKoy avers "that during the year 1932, your respondent *intercepted the rent on said described land, which under the law she was entitled to do* by giving notice to the tenants of J. B. Elrod and to J. B. Elrod himself to pay this respondent the rents, all of which your respondent did during the year 1932; that in compliance with and pursuant to said notice, J. B. Elrod and the tenants of J. B. Elrod delivered said five bales of cotton to this respondent in payment of rent or for the use and occupation of said lands for the year 1932." (Italics supplied.) ·

While the quoted averments in said answers, for reasons heretofore stated, are evidence, they are not conclusive. Mere legal conclusions, such as we have italicized, will not be considered, and doubtful inferences arising from equivocation will be resolved against the truth of the averments. When so considered, the averments in said answers are not inconsistent with the conclusion that all that was done between Elrod and his tenants and the defendant McKoy was the delivery of the rents due Elrod from Elrod's tenants to McKoy, as a payment on the debt of Elrod to McKoy. The conclusion is consistent with Elrod's statements in his answer to interrogatories: "I made seven bales of cotton in 1932. Mrs. McKoy got this 5 bales of this seven, one got lost or stolen and one bale was used to pay for making and gathering. I fed the corn to the stock on the place. * * * Yes, I have two tenants. I gave the place to the children and told them they could have what the place made if they would pay off the mortgage debt. This is all the rent contract I had with them," and the admission of Elrod testified to by witness King in response to the question: "What did he say about turning the crops over to Mrs. McKoy? He said it was his own debt, and he thought he was under obligation to pay his own debt first."

This falls far short of showing that McKoy intervened "for the purpose of intercepting the rents, incomes, and profits of the mortgaged estate," by notice to the mortgagor and his tenants to pay the rents to the mortgagee in her own right. To the contrary, it shows an agreement between the mortgagor and his tenants to deliver rent cotton due the mortgagor Elrod to the mortgagee McKoy as a payment on the mortgage debt. In short, that notwithstanding the mortgagor had made default at the law day of the mortgage, the mortgagee had allowed him to continue in possession as the owner of the land, and received the rents, incomes, and profits thereof, with the agreement that he deliver the same as payments on the debt secured by the real estate mortgage.

To come within the principle stated in Zeidman v. Homestead Savings & Mortgage Co., 221 Ala. 386, 129 So. 281, 282, the "notice to tenants of the mortgagor to pay rents to the mortgagee" must be tantamount to an assertion by the mortgagee of the ownership of the estate granted by the mortgage, discharged of its conditions. In the absence of such assertion or a foreclosure, the mortgagee is not entitled to claim the *mesne profits* as for use and occupation, and, unless there was a contract to pay rents to the mortgagee as landlord, there was no basis for a landlord's lien. Abbott v. Faulk, 231 Ala. 196, 164 So. 96; Connecticut General Life Ins. Co. v. Smith, 226 Ala. 142, 145 So. 651; Buchmann et al. v. Callahan, 222 Ala. 240, 131 So. 799; American Freehold Land Mortgage Co. of London v. Turner, 95 Ala. 272, 11 So. 211; Thompson & Co. v. Union Warehouse Co., 110 Ala. 499, 18 So. 105; Hughes & Tidwell Supply Co. v. Carr et al., 203 Ala. 469, 83 So. 472; Lamar v. Johnson, 16 Ala.App. 648, 81 So. 140.

The subsequent mortgages executed by Elrod and his tenants to the Bank were not given and accepted as payment of the mortgage debt, but were renewals and did not waive or destroy the complainant's superior equitable lien or title on the cotton in controversy. Bank of Oakman v. Thompson et al., 224 Ala. 87, 139 So. 238.

We are of the opinion, therefore, that the circuit court erred in dismissing the bill, and a decree will be rendered here granting the relief prayed for, and remanding the cause for a decree of reference to the register to ascertain the weight and value of the cotton and the balance due on the mortgage debt from Elrod to the complainant, and a reasonable solicitor's fee for the collection thereof.

Reversed, rendered, and remanded.

THOMAS, BROWN, and KNIGHT, JJ., concur.