75 So.2d 500 (1954)
Ex parte C. E. MORTON et al. Petition for Mandamus.
C. E. MORTON et al.
v.
NATIONAL BANK OF BOAZ.
6 Div. 682.
Supreme Court of Alabama.
August 30, 1954.
Rehearing Denied October 28, 1954.
*503 Wade H. Morton and Maurice F. Bishop, Birmingham, for appellants.
Finis E. St. John, Cullman, and Frank J. Martin, Gadsden, for appellee.
PER CURIAM.
There are two matters sought to be considered in this cause. One is to obtain a writ of mandamus to review the decree of the trial court dated August 1, 1953, adjudging that the pleas filed to the bill of complaint in equity are insufficient. The other matter is raised by an appeal from a decree of the court dated November 6, 1953, as amended November 19, 1953, overruling demurrer to the bill and to each and every aspect of it.
We will first consider the petition for mandamus.
Petitioners' brief states that the plea which they urge was sufficient, and as to which the court erred in holding was insufficient, was that filed July 8, 1953. That plea therefore is the one to which we will give attention. It is divided into eight numbered paragraphs followed by a prayer that the summons and complaint be quashed and the action be abated for the reasons assigned in the eight paragraphs constituting the plea.
The decree of the trial court rendered as to the sufficiency of that plea followed an opinion to the effect that it was duplicitous. It was observed in the opinion that the plea "is insufficient since it attempts to set up several defenses in one plea". And "it will be noted that the plea sets up the former proceeding in Marshall County as a defense to this suit; it, also, sets up that the State National Bank actually had nothing to do with the transactions as another defense, and as a third defense it is set up that the bill of complaint fails to state a claim or colorable claim against the State National Bank. This, in the opinion of the court, is sufficient to make the plea fatally defective". That status was therefore held to make the plea duplicitous.
The purpose of the bill is to establish a lien in favor of plaintiff on certain described bales of cotton, which were disposed of by the defendants C. E. Morton and O. H. Williams, acting in concert with the defendant bank which received the proceeds of the same and which it holds as trustee in invitum for plaintiff, and which trust a court of equity will enforce by rendering a judgment against all of them for the amount of such liability. The bill was filed in Cullman County. It alleges that the defendants C. E. Morton and O. H. Williams, who filed the plea in abatement, are resident citizens of Marshall County where is also located the principal place of business of plaintiff; and that defendant State National Bank of Decatur is a national banking association with a place of business known as Cullman Branch in Cullman County, Alabama. The defendant bank is not here complaining as to the venue, and does not join the plea of defendants Morton and Williams, which was held insufficient.
The plea in abatement under consideration alleges that C. E. Morton and O. H. Williams at the time the suit was commenced had their permanent residence in Marshall County and have never resided in Cullman County; that the transaction involved occurred in Marshall County; that the defendant State National Bank had nothing to do at any time with any of the acts and transactions complained of and did not participate therein in any way, and is not a material defendant in said suit; that the joinder of the State National Bank is colorable and fictitious and for the purpose of giving Cullman County the appropriate venue of the suit; that the bill does not state a claim or colorable claim or cause of action upon which the court ought to grant plaintiff relief against the bank; that on December 11, 1952 this plaintiff, as the sole party complaining, filed a suit in Marshall County in equity against said C. E. Morton and O. H. Williams, as the sole defendants, *504 seeking to establish the same relief against them on the same acts and transactions here set up. The bill is made an exhibit. That in said cause in Marshall County the said C. E. Morton and O. H. Williams demurred to the bill, and on April 24, 1953, the court sustained their demurrer by a decree of that date, allowing plaintiff time to amend; that instead of amending, the plaintiff therein on May 16, 1953 filed a motion to dismiss the suit without prejudice and without giving notice; and on that day the court decreed that said motion be granted, and the suit dismissed without prejudice. On May 29, 1953 the instant suit was filed, based upon the same acts and transactions, and joined the defendant State National Bank as a party for the purpose of attempting to lay the venue in Cullman County, but that the proper venue is Marshall County, because the defendant bank is not a material or necessary party thereto. The plea then alleges the conclusion that the Cullman Circuit Court is without jurisdiction, and that the venue is improperly laid in Cullman County, but that Marshall County is the county in which the suit should be brought and prosecuted. It then, as we have stated, prays that the summons and complaint be quashed and this action abated.
We do not understand that the plea in abatement sets up the proceedings in Marshall County as an adjudication of the issues involved, conclusive against the claim of plaintiff insofar as it affects C. E. Morton and O. H. Williams. But it is in the nature of a circumstance supporting the assertion that the claim against the defendant State National Bank is colorable, and that it is not a necessary party as required by section 294, Title 7, Code, as interpreted by this Court. Wilder v. Crook, 250 Ala. 424, 34 So.2d 832; Ex parte Fairfield-American National Bank, 223 Ala. 252, 135 So. 447; Pucket v. Pucket, 174 Ala. 315, 56 So. 585; Harwell v. Lehman, Durr & Co., 72 Ala. 344. It is said in Waddell v. Lanier, 54 Ala. 440, that "he is a material defendant within the meaning of this section, whose interest is antagonistic to complainants, and against whom relief is prayed".
We cannot interpret the plea as the trial court did as embracing two defenses in a single plea. Of course a defendant may file more than one plea, Equity Rule 16, Code 1940, Tit. 7 Appendix, though each plea must state a single ground of defense. First National Bank of Montgomery v. Tyson, 133 Ala. 459, 32 So. 144, 59 L.R.A. 399. But that does not require a plea to predicate the defense on a single fact or state of facts. The plea may consist of a variety of facts provided they conduce to a single point and give as their result one clear ground disposing of the bill. 30 C.J.S., Equity, § 311, p. 740; Sims Chancery Practice, section 456.
If the averments of the bill show that it is filed in the wrong venue, a demurrer to it on that ground is the proper practice. Wilder v. Crook, supra; Hammons v. Hammons, 228 Ala. 264, 153 So. 210.
But the only question we have in that connection is whether the bill states a cause of action against the State National Bank, not whether it is defectively stated. We think that it is not without equity as it stands.
Its general purpose, which as set out above, is to assert a claim that defendant bank became a trustee in invitum of funds subject to a lien held by plaintiff, of which it had notice, and seeks to enforce that claim. That presents a justiciable cause which we will later show is enforceable in equity. It is also sought in the same suit to charge petitioners C. E. Morton and O. H. Williams as trustees. That is also a justiciable claim on the same theory as that asserted against defendant State National Bank. The bill does not on its face show that Cullman is not a proper county in which such a claim may be presented and heard.
It is insisted that the plea sets out sufficient extraneous facts to show that Cullman is not a proper venue, for that defendant State National Bank is not a necessary party under section 294, Title 7, Code. That is rested on the assertion that the bank had nothing to do with the acts and transactions *505 complained of and did not participate therein in any way, and that its joinder was colorable and fictitious and to give Cullman County appropriate venue. We have shown that it does state a justiciable claim against the State National Bank on account of transactions by it with C. E. Morton and O. H. Williams effecting a destruction of the lien on cotton which plaintiff claims. The assertion that the bank had nothing to do with the acts and transactions complained of may refer to the acts and transactions between plaintiff and C. E. Morton and O. H. Williams. Probably it was not intended to assert that the State National Bank had nothing to do with the alleged acts and transactions between C. E. Morton and O. H. Williams with it. But if that is what is meant, it is a denial of the facts which support the merits of the claim against the bank, and the bank is not a party to that plea. The effect would be to try the merits of the claim against the bank on an issue to which it is not a party. We believe that theory is not tenable, as we shall show.
There is a principle which we think has application if the allegations of the plea are sufficient to that end. This Court had some difficulty in reaching the conclusion asserted in the case of Bolden v. Sloss-Sheffield Steel & Iron Co., 215 Ala. 334, 110 So. 574, 575, 49 A.L.R. 1206, but the conclusion there reached has not been departed from and is thus stated: "Where the jurisdiction of the court of law is acquired by the fraudulent concoction of a simulated cause of action, the fraud itself to be consummated through the instrumentality of a court of justice, the protection of the court demands that there should be a remedy. We can conceive of no worse reflection upon a judicial system, no lowering of its dignity and of the respect due to its findings more regrettable than that the tribunal of justice may become an impotent agency of fraud against those who look to it for protection and who are free from fault or neglect in the premises." We cite the following cases supporting the principle there declared: Anderson v. Anderson, 250 Ala. 427, 34 So.2d 585; Wright v. Fannin, 229 Ala. 278, 156 So. 849; Jones v. Henderson, 228 Ala. 273, 153 So. 214; McGathey v. Thompson, 224 Ala. 163, 138 So. 841; Keenum v. Dodson, 212 Ala. 146, 102 So. 230.
It will be observed that in order to come within that principle it is not sufficient merely to allege that the allegations of the complaint, upon which the jurisdiction of the court is rested, are false. If that were all that is required, the merits of plaintiff's claim against the State National Bank would be fully tried on the plea in abatement to which the bank is not a party. That is a result which we cannot support. In order for the principle to have application to a plea in abatement, it is necessary not only that the allegations of the complaint which support the jurisdiction of the court are false, but that the plaintiff in making those allegations knew that they were false and knew that he had no such cause of action or justiciable controversy as set out in it, but instituted it for the purpose of perpetrating a fraud upon the court and falsely to undertake to give the court jurisdiction.
In the case of Gunnoe v. West Virginia Poultry Co-Op. Ass'n, 115 W.Va. 87, 178 S.E. 691, 93 A.L.R. 944, cited by petitioners, the West Virginia Supreme Court held that a plea in abatement by an individual defendant in a suit against him and a corporation should have been sustained, when the venue was controlled by having made the corporation a defendant. The suit was a tort action. The plea alleged that no relation of master and servant existed between him and the corporation which would give rise to a cause of action against the corporation. The court held proper an issue in abatement of whether the individual defendant was the agent of the corporation. The corporation was not a party to that plea. It did not allege fraud in making the corporation a party to the suit. The court held that the plea was good without alleging fraud, and based the ruling on a line of cases holding that venue depends upon the actual existence *506 of a cause of action against the resident defendant and not the good faith of plaintiff in asserting it. The opinion supports the contention of petitioners. In many of the cases annotated on pages 949 et seq. (93 A.L.R.) the question arose after the resident defendant had been acquitted on trial or otherwise discharged; and in others the complaint did not show a cause of action against the resident defendant. When the resident defendant had been acquitted on a trial of the merits or otherwise discharged from liability, the authorities annotated differ on the necessity of fraud to discharge the non-resident defendant on that account. The question is discussed in 67 Corpus Juris 111, section 175. We think that when a bill in equity shows that the resident defendant has an "interest antagonistic to complainants and against whom relief is prayed," and a cause of action stated, his residence under our statute supports the venue of a suit against a plea in abatement by non-resident (of the county) defendants, unless there is a showing of fraud such as applies to other claims of fraud, as discussed above, in invoking the jurisdiction of the court.
Petitioners' counsel in brief do not contend that fraud is sufficiently alleged in the plea, but contend that it is not necessary to allege fraud.
In determining the sufficiency of a plea in equity, the court is not confined to grounds of demurrer as in respect to a plea at law. It is not contemplated that there be a demurrer to a plea in equity. But when it is set down for determination as to its sufficiency, if it is insufficient on any theory the court should so declare. The trial court in the instant case, we think, was mistaken in the ground upon which it was ruled that the plea was insufficient, but we think that the plea was insufficient on the ground which we have here discussed and, therefore, there is no error in the decree holding said plea to be insufficient.
This Court will not ordinarily entertain a petition for mandamus to review a ruling of the trial court on the sufficiency of a plea in abatement, which is subject to review on appeal from a final decree. But it sometimes will do so when adequate relief will not be available on appeal from the final decree. Rowe v. Bonneau-Jeter Hardware Co., 245 Ala. 326(17), 16 So.2d 689, 158 A.L.R. 1266; Thomas v. State, 241 Ala. 381, 2 So.2d 772; Ex parte Teague, 241 Ala. 53, 200 So. 892,as in divorce cases. Ex parte Davis, 249 Ala. 221(1), 30 So.2d 648; Ex parte Weissinger, 247 Ala. 113 (25), 22 So.2d 510.
In the instant case an appeal has been taken to this Court by these petitioners from a decree overruling their demurrer to the bill. That appeal brings to us for review that interlocutory decree but not the decree on the plea. We think it would promote justice and expedite the cause by expressing our views on the sufficiency of the plea in abatement presented by the petition for mandamus along with the appeal and, therefore, we have herein done so. Our consideration of the petition for mandamus is not intended to extend beyond that theory. We think the petition for mandamus should be denied.
On appeal of C. E. Morton and O. H. Williams from the decree overruling their demurrer to the bill.
The appellants here are C. E. Morton and O. H. Williams who with the State National Bank of Decatur are the defendants in this suit in equity in Cullman County, in which it is alleged that the State National Bank has a branch business. Demurrers were filed by C. E. Morton and O. H. Williams jointly and by the State National Bank separately. Two separate decrees were rendered: one overruling the demurrer of C. E. Morton and O. H. Williams, and one overruling the demurrer of the State National Bank. C. E. Morton and O. H. Williams have appealed. The State National Bank did not appeal and did not assign errors in response to notice to it. C. E. Morton and O. H. Williams each separately and severally assigned as error the decree overruling their demurrer to the bill and to its various aspects.
*507 We will undertake to set out an outline of the facts alleged in the bill in great detail and at great length. During 1951 complainant had an agreement with Morton and Williams Company, Inc., (to which we will refer as the corporation). It is not alleged whether it was verbal or in writing. (The corporation is not a party to this suit.) By said agreement a line of credit was established whereby "said corporation borrowed money from plaintiff, evidencing said indebtedness by its promissory notes for the sum so borrowed, and secured said indebtedness by pledging to plaintiff its negotiable cotton warehouse receipts". The bill does not set out the terms of the collateral agreement so as to show whether the legal title passed by it to the plaintiff. It then alleges, to paraphrase it, that plaintiff allowed the corporation to sell the cotton so pledged, upon the purchaser of which it drew a draft for the purchase price, and that plaintiff gave the corporation immediate credit for the amount of those drafts, each respectively. The receipts for the cotton thus sold are alleged to have been pledged to secure the credit allowed for the amount of the drafts and any indebtedness owing it by the corporation. The bill then alleges that on account of such transactions the corporation is now indebted to plaintiff in a named large sum after allowing all credits and offsets. That the business of the corporation was buying and selling cotton; that to facilitate their business, the defendants C. E. Morton and other officers of the corporation were permitted to take possession of said pledged receipts for the limited purpose of making up invoices for the sale of particular lots of cotton to third parties as purchasers and to surrender the receipts to the issuing warehouses to obtain possession of the cotton for delivery to the purchasers; that the remaining receipts and the drafts on the purchasers for the cotton sold were deposited daily with the plaintiff under its continuing pledge. That during 1951 and 1952 the defendants C. E. Morton and O. H. Williams (not the corporation) became indebted to the defendant State National Bank in a named large sum, evidenced by their personal notes and "secured by 572 negotiable cotton warehouse receipts", with an agreement by which C. E. Morton and O. H. Williams were partners so dealing with defendant State National Bank, and each was personally liable to said bank for said indebtedness.
That in 1951 or 1952, at a time when the corporation (Morton and Williams Company, Inc.) was insolvent a demand by defendant State National Bank was made on C. E. Morton and O. H. Williams, individually, for an additional twenty-five cotton warehouse receipts be pledged to it to better secure the indebtedness owing by them individually to defendant State National Bank. That they, without the knowledge and consent of plaintiff, withdrew twenty-five negotiable cotton warehouse receipts from those then under pledge to plaintiff as security for the debt to it of the corporation, while said receipts were in possession of C. E. Morton as an officer of said corporation for the limited purpose of facilitating a delivery of cotton sold by the corporation for the account of plaintiff. That said C. E. Morton delivered to defendant State National Bank said twenty-five cotton warehouse receipts, without any new or additional consideration, but as additional security for the indebtedness owing defendant State National Bank by C. E. Morton and O. H. Williams, individually, and thereby converted said twenty-five bales of cotton and destroyed plaintiff's lien on them, and violated the trust imposed upon the parties to the damage of plaintiff in the loss of the security.
Paragraph 7(B) of the bill adopts the allegations of paragraph 7(A) above, and alleges, in the alternative, that defendant O. H. Williams with knowledge of the insolvency of Morton and Williams, Inc., (the corporation) and with knowledge that the security held by the defendant State National Bank was insufficient to liquidate their debt to it, and for the purpose of reducing their liability, requested defendant State National Bank to demand of defendant C. E. Morton an additional twenty-five cotton warehouse receipts as security for their personal liability to said bank.
That on or about January 15, 1952 defendant State National Bank made demand *508 in writing upon defendants C. E. Morton and O. H. Williams that, inasmuch as defendant State National Bank was holding receipts for 212 bales of cotton as security for their debt to it, which bore date of one year previously, and receipts for 186 bales which bore date of two years previously, the said C. E. Morton and O. H. Williams should substitute other and current warehouse receipts for said old receipts; that in compliance with said demand, the defendant C. E. Morton, acting for himself and O. H. Williams, who knew that the corporation was insolvent, withdrew 292 negotiable cotton warehouse receipts from the receipts of said corporation then under pledge to plaintiff as security as alleged above, and while possession of said receipts was held by C. E. Morton as an officer of the corporation under the agreement, mentioned above, for the limited purpose as herein stated, and in violation of the agreement with plaintiff, delivered said 292 receipts to defendant State National Bank in exchange for a like number of said old receipts held by it. That thereby plaintiff's lien on said 292 bales of cotton, delivered to defendant State National Bank, was destroyed and the trust violated, resulting in a difference in value of $20,000.
In paragraph 8(B) plaintiff adopts the allegations of paragraph 8(A) and, in the alternative, alleges in addition thereto that defendant O. H. Williams with knowledge of the insolvent condition of the corporation and with knowledge that the security then held by defendant State National Bank was insufficient to liquidate their debt to it and to reduce their liability, suggested or requested defendant State National Bank to demand of defendants C. E. Morton and O. H. Williams to substitute other and current receipts as aforesaid.
That C. E. Morton and O. H. Williams derived personal benefit, in that the twenty-five negotiable warehouse receipts, and the 292 such receipts substantially enhanced the security held by defendant State National Bank for the debt due it by C. E. Morton and O. H. Williams; that defendant State National Bank has disposed of said cotton and said warehouse receipts, and now has in its hands the proceeds received therefrom for which it has credited C. E. Morton and O. H. Williams on their indebtedness to it, and said cotton is beyond the reach of plaintiff. That such conduct of C. E. Morton and O. H. Williams, outlined above, constituted a fraudulent plan to reduce their personal liability to defendant State National Bank.
The defendant State National Bank did not part with any new or good or valuable consideration at the time for said twenty-five bales of cotton, but received said cotton subject to plaintiff's lien.
That defendant State National Bank received receipts for said 292 bales with full knowledge and notice of the fact that said receipts were then subject to the lien of plaintiff, and is liable to plaintiff for the difference in value lost to plaintiff.
Plaintiff avers that C. E. Morton and O. H. Williams are liable to plaintiff for the full value of all of said cotton warehouse receipts which were withdrawn, as above stated, and which were under pledge to plaintiff and on which plaintiff has a lien.
It is apparent that plaintiff was endeavoring in drafting his bill to pursue the course and to obtain the benefit declared in several of our cases to the effect that:
"The basis of the doctrine there asserted is that, where one has a lien on chattels and the right to charge the same for his use in the satisfaction of a debt secured by the lien, and the debtor has the legal title and possession, the property is affected with a trust, and, if the debtor converts or disposes of the property to another in such sort as to destroy the lien and prevent its enforcement, the jurisdiction and powers of a court of equity may be invoked to charge the person or persons who, with notice or knowledge of such lien, received the benefit of such property as trustee or trustees in invitum, and require him or them to account, unless such person or persons can show a paramount equity in the property. Peters v. Rhodes, 157 Ala. 25, 47 So. 183.

*509 "Where, however, it appears that the creditor is secured by a mortgage which passes to him the legal title, he has an adequate remedy at law, and, unless he can show that the trust property or some part thereof is in the hands of the defendant, so that the processes of the court may reach the property, itself, or some part thereof, and foreclose thereon, courts of equity will not intervene. Chambers v. Chambers, 98 Ala. 454, 13 So. 674; J. E. Butler & Co., v. A. G. Henry & Co., 202 Ala. 155, 79 So. 630; Hanson v. Luther, 229 Ala. 256, 156 So. 771." Leeth National Bank v. Elrod, 233 Ala. 340, 341, 172 So. 104, 105.
The principle there asserted was also affirmed in Johnston v. Johnston, 256 Ala. 485(8), 55 So.2d 838; Patton v. Darden, 227 Ala. 129, 148 So. 806; Webb & Aigner v. Darrow, 227 Ala. 441, 150 So. 357; Kelley v. Woodley, 228 Ala. 401, 153 So. 745.
The case of Redd Chemical & Nitrate Co. v. W. T. Clay Mercantile Co., 219 Ala. 478, 122 So. 652, contains some statements which seem to conflict. If so intended, the later cases show that such equitable right has existed and been recognized long before, and uniformly since the Redd case with the concurrence of Mr. Justice Brown, its author. The later cases are controlling.
The usual nature of a suit for plaintiff in equity, if he has the legal title transferred to him as security for a debt owing by the transferor, is a foreclosure of the rights of the debtor, usually effected by a seizure and sale of the property. There must then be some of the property subject to that transfer available for seizure and sale purposes. Hanson v. Luther, 229 Ala. 256, 156 So. 771; Leeth National Bank v. Elrod, supra.
The instant suit is not sufficient to rest on that principle, and it is not so claimed. It is not against plaintiff's debtor, the corporation, nor is any of the pledged property alleged to be available in specie.
The nature of suit here pursued is available to a lienholder whose lien was destroyed by defendant while in possession of the property with the legal title or holding under it and who sold without authority and received value for it. Having the possession supported by the legal title, and plaintiff having a lien, defendant was in the status of a trustee holding for the benefit of plaintiff to the extent of his interest. And when such a person sells the property and destroys plaintiff's lien and receives value for it, the lien attaches to such value and the trust is transferred to it. The Court held under those circumstances that such a person had received money or its equivalent, which in equity was subject to plaintiff's claim and, therefore, he could sue in equity, establish his claim and have a personal judgment without the necessity of identifying any certain fund or other asset in specie upon which to fasten the trust. And that since defendant had received money or its equivalent, which in equity and good conscience became subject to plaintiff's claim, he could sue such person at law on the common counts for money had and received, Allen v. M. Mendelsohn & Son, 207 Ala. 527[3], 93 So. 416, 31 A.L.R. 1063; Farmers' Bank & Trust Co. v. Shut & Keihn, 192 Ala. 53, 68 So. 363; or he could sue such a person in a tort action on the case for destroying his lien.
We also think that if an agent of one who has the legal title to chattels acquires their possession with authority to sell them for a certain purpose and makes a sale contrary to his authority and receives therefor money or its equivalent, as to such money he becomes in equity and good conscience a trustee in invitum, although the agent may claim personal ownership free from the rights of the principal; and, in that event, a suit in equity should lie against him for the amount of the value received. Loftin v. Smith, 251 Ala. 202, 36 So.2d 312; Builders' Supply Co. v. Smith, 222 Ala. 554, 133 So. 721; Robinson v. Pierce, 118 Ala. 273, 24 So. 984, 45 L.R.A. 66, 54 Am.Jur. 167, section 218; Alexander v. Hillman, 296 U.S. 222, 56 S.Ct. 204, 80 L.Ed. 192.
*510 The power given by the principal to his agent to sell the property creates a trust in the agent and vests in him the legal title for that purpose. And since thereby the trustee is vested with the legal title, his conveyance was of the legal title, and the rights of the principal as the cestui que trust can be protected in equity to compel the grantee to respond as trustee in invitum. Robinson v. Pierce, supra.
The instant bill does not show that C. E. Morton and O. H. Williams received money or its equivalent when they transferred the receipts to defendant State National Bank. Therefore, there was no relation of trustee in invitum created against them by such transaction to support a suit in equity. The demurrer of C. E. Morton and O. H. Williams to the aspect of the bill seeking to hold them as trustees in invitum should have been sustained on ground No. 54.
It may be important in some aspects of this suit, not now involved, to determine whether or not the plaintiff received the legal title by a transfer of the cotton warehouse receipts to it or merely the special interest of a pledgee.
In our recent case of Lauderdale County Co-operative v. Lansdell, 260 Ala. 452, 71 So.2d 70, we undertook to analyze that question with respect to a pledge of cotton warehouse receipts as security for a debt.
We assume from the synopsis of the allegations of the bill, set out above, that the cotton warehouse receipts in question were actually delivered into the possession of the plaintiff and later were redelivered by the plaintiff to the individual defendants C. E. Morton and O. H. Williams for the limited purpose there set out. We are not informed from the allegations of the bill what were the provisions of the collateral instrument by which those receipts were pledged to plaintiff as security, for the purpose of determining whether or not they assigned to plaintiff the legal title thereof. On demurrer to the bill we must indulge presumptions unfavorable to the plaintiff. On that principle we must presume that the collateral instrument assigned to the plaintiff the legal title. It is also necessary for us to revert to the principles of law affecting the title of pledged property. We declared in the Lansdell case, supra, as a result of the authorities there cited, that if there is no writing or other agreement assigning title of the collateral to the pledgee, and if there is no statute which affects the question, the effect of a pledge and the delivery of the property to the pledgee passes a special interest to the property in the pledgee less than the legal title. See, also, May v. Stallings, 245 Ala. 292, 16 So.2d 870. We were dealing with warehouse receipts for cotton when we discussed the question in the Lansdell case and referred to the fact that such receipts may be either negotiable or non-negotiable. Sections 507 and 508, Title 2, Code. But whether the one or the other, it is provided by sections 549 and 550, Title 2, Code, that a transfer of those receipts either by endorsement or mere delivery passes the legal title. This was also noted in the case of Commercial National Bank of New Orleans v. Canal-Louisiana Bank & Trust Co., 239 U.S. 520, 36 S.Ct. 194, 60 L.Ed. 417.
The decree overruling the demurrer of C. E. Morton and O. H. Williams to the aspect of the bill seeking to hold them as trustees in invitum should be reversed and one here rendered sustaining said demurrer with leave to amend the bill within twenty days.
The foregoing opinion was prepared by FOSTER, Supernumerary Justice of this Court, while serving on it at the request of the Chief Justice under authority of Title 13, section 32, Code, and was adopted by the Court as its opinion.
Mandamus denied.
Decree on demurrer reversed and rendered with leave to amend the bill within twenty days and cause remanded.
LAWSON, SIMPSON, STAKELY and MERRILL, JJ., concur.

*511 On Rehearing.
PER CURIAM.
Our attention has been called to what is claimed to be an error in the opinion to the effect that when Morton and Williams delivered the warehouse receipts to the State National Bank as better security for an indebtedness they owed it, and when the bank sold the same and received the price of it and credited the amount thereof on the debt of Morton and Williams to it, the said Morton and Williams did not receive such property right as to be sufficient upon which to found a trust in invitum, and to support such a liability. We thought the credit which Morton and Williams received from the State National Bank was not such a res as to support the claim of a constructive trust in respect to it. It was on that theory alone that we thought the bill of complaint was subject to the demurrer of Morton and Williams.
We allowed an amendment to be filed to enable complainant to make it clear that a personal judgment against Morton and Williams is sought here only on the theory they are jointly liable with the State National Bank, Saunders v. McDonough, 218 Ala. 207[3], 118 So. 389, which is alleged to have received from Morton and Williams the cotton on which complainant had a lien and sold the same and received value for it, although thereby Morton and Williams did not receive any property by the transaction on which a constructive trust could be fastened against them. They are proper parties in a suit in equity to enforce the claim against the State National Bank, and being liable to complainant for a breach of their trust a personal judgment may be rendered to do complete justice in the one suit. Leach v. Gray, 201 Ala. 47, 77 So. 341, 7 A.L.R. 890.
With reference to a constructive trust, it is said in 3 Bogert's Trusts and Trustees, section 481, page 80 (part 1): "In each there is to be found an acquisition of property by a trustee or other fiduciary by means of a breach of one of his duties as fiduciary and the assertion of a right by the cestui or other intrusting party to the benefit of such property through the declaration of a constructive trust." And again in section 471, page 3, it is said that a "constructive trust may be defined as the device used by chancery to compel one who unfairly holds a property interest to convey that interest to another to whom it justly belongs. When a court of equity finds that a defendant is the holder of a property interest which he retains by reason of unjust, unconscionable, or unlawful means, it naturally desires to take such interest from the defendant and vest it in the wronged party". We quote from page 11, as follows: "In many cases where a constructive trust is decreed, the plaintiff has the choice between a remedy at law and the constructive trust or another remedy in equity. In a suit to obtain a constructive trust, it is not necessary to prove the inadequacy of the remedy at law. The complainant may freely elect between the relief which the law can give and the constructive trust device". And on page 17, it is said: "The decree which establishes the constructive trust usually recites that the defendant is declared to be a constructive trustee of the res for the complainant and is directed to convey the res to the complainant". It is said in 65 Corpus Juris 968, et seq:
"While it has been said that the right to follow and recover trust property first existed only with reference to the identical trust property in its original form, which it was necessary to identify, it is now settled that the cestui que trust may follow the trust property through any change in form or species and have the trust attached to the property in its new form, for the product of the trust property follows the nature of the original thing itself. Thus the cestui que trust may generally claim, as subject to the trust, any proceeds which the trustee has received for the trust property, or any property into which the trustee has invested or converted the trust property, or the proceeds thereof, provided, of course, the property claimed can be identified as the product into which the trust property can be traced."
*512 Sometimes a complainant seeks to claim the res itself (or a lien on it), the thing which the trustee received in disposing of trust property. When so, it must be found and identified in possession of defendant or of one who holds with notice so that the court through its processes may seize the identical thing and deliver it to the complainant, or enforce a lien on it and subject it to sale. This right is given full force and effect in our cases and the limitations are also stated. Hutchinson v. National Bank of Commerce, 145 Ala. 196, 41 So. 143; Nixon State Bank v. First State Bank, 180 Ala. 291, 60 So. 868; Brooks v. Greil Bros. Co., 192 Ala. 235, 68 So. 874; Lummus Cotton Gin Co. v. Walker, Sup't, 195 Ala. 552, 70 So. 754; Evans v. Evans, 200 Ala. 329, 76 So. 95; Hanover National Bank of New York v. Thomas, Sup't, 217 Ala. 494, 117 So. 42.
A complainant may have a personal judgment for the money value of the property withheld, with or without a lien on it, or for the property itself. But in any event, there must be property received by the alleged trustee in invitum as the consideration for the trust property unlawfully disposed of, so that a constructive trust may be fastened. If there be no such property equity is not available to enforce a constructive trust even merely to render a personal judgment.
We have not found a case or authority where the property on which a trust in invitum was sought to be fastened in equity was merely a credit on an existing debt owing by the recalcitrant trustee to the person to whom he illegally disposed of the trust property.
We improperly observed in the above opinion that a suit at law for money had and received would not lie when such credit was all that the erring trustee received. That has been taken out of the opinion. The contrary has been held in this State. Alabama Dry Dock & Shipbuilding Co. v. Ward, 32 Ala.App. 535, 27 So.2d 710, certiorari denied, 248 Ala. 371, 27 So.2d 716; 58 C.J.S., Money Received, § 3, p. 912; 41 Corpus Juris 32.
But we think that holding does not conflict with the requirement that to enforce a constructive trust there must have been a tangible form of identifiable property which was received as the consideration for the sale of trust property or into which it may be otherwise traced and identified. An action on a common count for money had and received is available when one person has received money or money's value which in equity and good conscience belongs to complainant. Barnett v. Warren, 82 Ala. 557, 2 So. 457; Farmers' Bank and Trust Co. v. Shut and Keihn, 192 Ala. 53, 68 So. 363; Dorsey v. Peppers, 202 Ala. 321, 80 So. 403; Allen v. M. Mendelsohn & Son, 207 Ala. 527, 93 So. 416, 31 A.L.R. 1063; Tipton v. Duke, 221 Ala. 77, 127 So. 524; Goodall Real Estate & Insurance Co. v. North Birmingham American Bank, 225 Ala. 507, 144 So. 7.
That action is available to such a beneficiary at his election when a constructive trust arises under those circumstances, but it is not limited to a situation where a constructive trust may be decreed. Whereas a constructive trust will not always be decreed when a suit for money had and received is available.
The principles applicable to a suit for money had and received are discussed in our cases digested in 14 Alabama Digest, Money Received, et seq. and pocket part, and support the statements made above. See, also, Johnston v. Johnston, 256 Ala. 485, 55 So.2d 838.
The opinion should be modified as indicated and the application for rehearing overruled.
The foregoing opinion was prepared by FOSTER, Supernumerary Justice of this Court, while serving on it at the request of the Chief Justice under authority of Title 13, section 32, Code, and was adopted by the Court as its opinion.
Opinion modified; application for rehearing overruled.
LIVINGSTON, C. J., and LAWSON, STAKELY and CLAYTON, JJ., concur.