COBB, Chief Justice
(dissenting).
I respectfully dissent. Although I agree with the majority that we should entertain reviewing a trial court’s preliminary injunction under a de novo rather than ex-eess-of-discretion standard, the circumstances in this case do not warrant such a change. Fundamental fairness is'denied the parties in this case by not allowing them to brief and argue their respective positions with an understanding of the appropriate standard of appellate review.[5] The parties did not know that this Court would conclude that the facts presented here would'be deemed undisputed and that the preliminary injunction would be subjected to a de novo review. Indeed, the parties are likely to be as surprised as I am that the majority, with little discussion and no fanfare, finds the facts to be undisputed. Logic dictates that if the facts were undisputed, Holiday Isle would have, instead of filing a motion to compel arbitration and dismiss or stay the proceedings, filed a motion for a summary judgment, which in the absence of a genuine issue of material fact, would have presented the query whether Holiday Isle was entitled to a judgment as a matter of law. The trial court would not have ordered this case to arbitration or enjoined the negotiation of the letters of credit had it not concluded that the facts are in dispute, particularly with respect to the underlying issue — whether the condominium units were completed within two years of April 1, 2005, in accordance with the terms of the purchase agreements.
The parties have not presented this Court with any definitive findings or conclusions about the record, and significant material differences exist about the facts to dissuade me from applying a de novo review to the preliminary injunction. On April 2, 2007, a date that was already beyond the two-year completion term, when the purchasers conducted the pre-closing inspection of their respective units, they were instructed upon their arrival to wear hard hats or they would not be allowed to enter the premises. Once inside the condominium complex, the purchasers were met with a reception area that was not glassed in, an elevator that did not appear in working condition, and an incomplete parking deck. When they reached their designated units, 104 and 105, the purchasers found laborers still performing work. Holiday Isle does not deny that the construction tasks noted by the purchasers were not finished or that as of April 2, 2007, no unit owner had been permitted to occupy the condominium or even allowed ingress or egress without an escort and a hard hat. Holiday Isle refused to return the letters of credit after the purchasers notified it that because the units had not been completed within two years of April 1, 2005, the purchase agreements were void. The purchasers demanded the re *1182 turn of their earnest-money deposit, i.e., their letters of credit. Holiday Isle refused to return the letters of credit and instead scheduled a closing date for April 80, 2007. Holiday Isle contends that the work remaining to be done on the units consisted only of “punch list items.”
The purchasers performed another inspection of Holiday Isle on April 23, 2007. They found unit 105 in much the same condition as it had been on April 2, 2007. At this time, the inspection of unit 105 also revealed problems with paint and other defects. As for the condominium complex itself, the purchasers noted that the pool and parking garage were incomplete and that there were no permanent handrails on the stairs. The purchasers were asked to leave the premises before they could complete their inspection.
The facts concerning the ultimate holder of the letters of credit are also troubling. Section 4 of the purchase agreements provides that “Bay Title Insurance Company, Inc. shall be the Escrow Agent.” On April 27, 2007, counsel for the purchasers wrote the escrow agent, Bay Title, informing it that the purchasers were contesting any finding that they had defaulted under the purchase agreements. Subsequently, the purchasers became aware that Bay Title had resigned as escrow agent, and the letters of credit were being held by Surety Land Title, Inc. On July 13, 2007, Surety Land Title delivered the letters of credit to Holiday Isle “since it did not have any written authority to hold the letters of credit nor any authority to draw on them.” The purchasers dispute that the purchase agreements or letters of credit were modified in any way so as to authorize the appointment of a new escrow agent, including Surety Land Title. It is undisputed that Holiday Isle now possesses the letters of credit. In support of the motion for a preliminary injunction, the purchasers submitted evidence to the trial court supporting the reasons for their concern about the financial viability of Holiday Isle. The trial court was provided information about subcontractors’ liens and other lawsuits and/or arbitration proceedings pending and/or threatened against Holiday Isle in connection with the condominium complex.
Although precedent establishes that a letter of credit generally exists independently of the underlying contract between a buyer and a seller, none of the cases the majority discusses involve a factual scenario, such as this one, that is governed by the Alabama Uniform Condominium Act, § 35-8A-101 et seq., Ala.Code 1975 (“the AUCA”). As the majority acknowledges, a deposit for the purchase of a condominium unit, whether cash or a letter of credit, is to be held by an escrow agent until closing, until the purchaser defaults, or until the deposit is refunded to the purchaser. The trial court entered the preliminary injunction in this case enjoining Holiday Isle from negotiating the letters of credit until after the factual disputes are resolved by the appointed arbitrator in arbitration requested by Holiday Isle and compelled by the trial court. I agree with the trial court that the letters of credit “are inextricably intertwined with the arbitration issues.” By holding that the trial court erred in granting the purchasers’ motion for a preliminary injunction, the majority has also effectively interfered with the arbitration of the ultimate issue. The letters of credit in this case were “in lieu” of the earnest-money deposit for the purchase of the condominium units under § 2(B) of the purchase agreements. According to § 35-8A-410, Ala.Code 1975, titled “Escrow of deposits,” deposits in connection with the purchase of a condominium unit shall be held in escrow “by a licensed title insurance company, an attorney, a licensed real estate broker or an *1183 institution whose accounts are insured by a governmental agency or instrumentality until (i) delivered to the declarant at closing; (ii) delivered to the declarant because of the purchaser’s default under a contract to purchase the unit; or (iii) refunded to the purchaser.”
The escrow deposits mandated by § 35-8A-410 do not present an ordinary letter-of-credit situation. According to the Alabama Commentary to § 35-8A-410, the funds held in escrow are similar to a trust fund: “Equally important, the funds on deposit should he regarded in a manner somewhat similar to a trust fund, such that creditors of the developer, whether the construction lender, material suppliers or contractors, may not reach these funds to satisfy their claims against an insolvent developer.” (Emphasis added.) If Holiday Isle is allowed, as the majority holds, to negotiate the letters of credit before arbitration is completed, the purpose of the Alabama Legislature in enacting § 35-8A-410 will be frustrated. The possibility exists that, before the parties can arbitrate their dispute, creditors of Holiday Isle may make a claim on the letters of credit as soon as they are converted to cash. As argued throughout the purchasers’ brief, the injunction in this case provides a close analogy, both legally and equitably, to a constructive trust. The constructive-trust-fund nature of the letters of credit will be lost as soon as the preliminary injunction is dissolved.
In questionable violation of § 35-8A-410 of the AUCA, Holiday Isle is now acting as the escrow agent. This undisputed fact makes the need for a preliminary injunction, in order to avoid irreparable harm to the purchasers, of paramount importance. Under the express terms of the purchase agreements and § 35-8A-410, Holiday Isle is not an authorized escrow agent. An escrow agent is generally considered to be the agent of both parties to an escrow agreement. See Fisher v. Comer Plantation, Inc., 772 So.2d 455 (Ala.2000); Gurley v. Bank of Huntsville, 349 So.2d 43 (Ala.1977). With Holiday Isle in possession of the letters of credit instead of Bay Title, the “licensed title insurance company” agreed upon by the parties, the purchasers have lost the benefit of a neutral escrow agent, the entity charged with maintaining the escrow trust fund with due care. This scenario creates the need for the preliminary injunction prohibiting Holiday Isle from negotiating the letters of credit without a favorable ruling from the arbitrator.
Because Holiday Isle has appealed the order of the trial court issuing the preliminary injunction, as soon as the trial court dissolves the preliminary injunction on remand, Holiday Isle will presumably negotiate the letters of credit in its possession before arbitration is completed. If the arbitrator finds a genuine and material factual dispute over whether Holiday Isle completed the condominium units within the defined two-year period and then rules in favor of the purchasers, the dissolution of the preliminary injunction may have caused irreparable harm to the purchasers. The majority chooses not to address this potential outcome other than to propose “the purchasers’ remedy is an action at law against the beneficiary of the letters of credit [Holiday Isle] or perhaps against the depository party for want of due care in honoring the demand for payment as suggested by the Alabama Commentary to § 35-8A-410.” 12 So.3d at 1179. This conclusory statement by the majority does not address the legitimate concern of the purchasers that Holiday Isle may not be able to pay a future monetary judgment in their favor if Holiday Isle is allowed to negotiate the letters of credit before arbitration is completed. Nor does the majority address the quandary presented by the *1184 fact that Holiday Isle, rather than the agreed upon escrow agent, Bay Title, is in possession of the letters of credit.
Inadequacy of a remedy at law justifying an injunction may arise from the insolvency of the defendant. Martin v. First Federal Sav. & Loan Ass’n of Andalusia, 559 So.2d 1075 (Ala.1990) (preliminary injunction issued against a mortgage servicing company in financial difficulty that was continuing to collect mortgage payments after its servicing contract was terminated); Shelton v. Shelton, 238 Ala. 489, 192 So. 55 (1939). When a defendant, as here, is the holder of a property interest and its holding of that interest is disputed as unjust, unconscionable, or unlawful, a constructive trust can be imposed. See Ex parte Morton, 261 Ala. 581, 75 So.2d 500 (1954). However, in order to obtain a constructive trust, it is not essential to prove the inadequacy of a remedy at law. 261 Ala. at 592, 75 So.2d at 511. The issue whether a constructive trust results is one of fact. Pollution Controh-Walther, Inc. v. Belzer, 406 So.2d 372 (Ala.1981). Constructive trusts can and have been imposed. See Holman v. Kruk, 485 So.2d 715 (Ala.1986) (constructive trust imposed upon minor’s Social Security funds that sister had spent); Snellings v. Builders’ Supply Co., 228 Ala. 47, 152 So. 459 (1934) (constructive trust imposed upon proceeds of mortgage created for benefit of plaintiffs).
The preliminary injunction issued by the trial court in the instant case is tantamount to a constructive trust over the letters of credit, especially in light of the fact that Holiday Isle, instead of a neutral escrow agent as required by § 35-8A-410, exercises control over the letters. A preliminary injunction has been found to be appropriate to preserve the status quo and to prevent dissipation of funds in a constructive trust when there are specific identifiable funds that the defendant has refused to turn over. See Georgia Banking Co. v. GMC Lending & Mortgage Servs. Corp., 923 So.2d 1224 (Fla.Dist.Ct.App.2006). The letters of credit at issue involve specific identifiable funds of the purchasers, akin to “trust funds,” as explained by the Alabama Commentary to § 35-8A-410.
Under our precedent, a preliminary injunction may be issued when: (1) the requesting party would suffer irreparable harm without the injunction; (2) the requesting party has no adequate remedy at law; (3) the requesting party has at least a reasonable chance of success on the ultimate merits; and (4) the hardship imposed on the adverse party would not unreasonably outweigh the benefit accruing to the requesting party. SouthTrust Bank of Alabama, N.A. v. Webb-Stiles Co., 931 So.2d 706, 708 (Ala.2005) (quoting Ormco Corp. v. Johns, 869 So.2d 1109, 1113 (Ala.2003), quoting in turn Perley v. Tapscan, Inc., 646 So.2d 585, 587 (Ala.1994)). In Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley, 756 F.2d 1048, 1052 (4th Cir.1985), the United States Court of Appeals for the Fourth Circuit held that equitable relief is appropriate when an arbitral award could not return the parties substantially to the status quo, particularly if the enjoined conduct would render the arbitration process a “hollow formality,” i.e., “ ‘the arbitral award when rendered could not return the parties substantially to the status quo ante.’ ” (Quoting Lever Bros. v. International Chem. Workers Union, Local 217, 554 F.2d 115, 123 (4th Cir.1976).) The majority of federal courts to rule on the question have concluded that in limited situations a binding arbitration agreement does not bar a plaintiff from seeking emergency injunctive relief or other provisional remedies. Performance Unlimited, Inc. v. Questar Publishers, Inc., 52 F.3d 1373 (6th Cir.1995). Clearly, in the instant case, the *1185 only way to preserve the status quo is to enjoin Holiday Isle from negotiating the letters of credit until after the arbitrator rules on the ultimate issue — whether either party violated the purchase agreements.
The majority’s conclusion is in conflict with the purpose and intent of the AUCA. Because of the length of time needed to complete a new condominium complex, it is common practice for letters of credit rather than cash deposits to be used to secure preconstruction agreements. The majority’s holding that such letters of credit are not directly tied to the underlying purchase agreements may thwart the use of such financing arrangements in the future. Thus, I disagree that this case warrants a change in the standard of review for a preliminary injunction. In determining if a trial court properly issued a preliminary injunction, the standard of review is whether the trial court exceeded its discretion in doing so. Baldwin County Elec. Membership Corp. v. Catrett, 942 So.2d 337, 344 (Ala.2006) (“‘[I]f it cannot be shown that the trial court exceeded its discretion in either granting or refusing to grant a preliminary injunction, the court’s “action will not be disturbed on appeal.” ’ ” (quoting Johnson v. Willis, 893 So.2d 1138, 1141 (Ala.2004), quoting in turn Teleprompter of Mobile, Inc. v. Bayou Cable TV, 428 So.2d 17, 19 (Ala.1983))). A trial court exceeds its discretion when it “exceed[s] the bounds of reason, all the circumstances before the lower court being considered.” Valley Heating, Cooling, & Elec. Co. v. Alabama Gas Corp., 286 Ala. 79, 82, 237 So.2d 470, 472 (1970).
The record before this Court establishes that the purchasers have a reasonable chance of success on the ultimate merits and that Holiday Isle has not set forth evidence of any undue hardship it will endure by waiting for arbitration, a proceeding affirmatively sought by Holiday Isle, to be completed. In light of the material facts in dispute, which are inextricably intertwined with the letters of credit, combined with the possibility of irreparable harm to the purchasers if the status quo is not maintained, I cannot conclude that the trial court exceeded its discretion in issuing the preliminary injunction pending the outcome of arbitration. Accordingly, I dissent.

. For example, principles of fundamental fairness and due process required this Court to limit the well-settled rule that this Court may affirm a summary judgment it determines is correct even when the trial court has based the summary judgment on an incorrect legal analysis to those situations in which both sides have received notice and an opportunity to address the bases of the summary judgment. See Liberty Nat'l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C., 881 So.2d 1013, 1020 (Ala.2003). In this case, the parties could not reasonably have anticipated that this Court would change the standard of review for a preliminary injunction; they have had no opportunity to frame their arguments in light of the new standard. Similarly, the change in the standard of review implemented by the Court in the majority opinion cannot be applied fairly to the parties in this case, even if the Court chooses to apply that change prospectively.